STRECKFUS STEAMERS, INC., a Corporation, v. ELMER JOHN KEITEL, SR., Chairman, GEORGE A. ROZIER and HARRY P. DRISLER, Members of the UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI, Appellants.—No. 38965.—182 S. W. (2d) 587.

Division One, October 9, 1944.

*Edward D. Summers,* Acting Chief Counsel, for appellants; *George A. Rozier* of counsel.

410

*William G. Marbury* for respondent.

██ DOUGLAS, J.—Streckfus Steamers, Inc., applied to the circuit court for a review of the decision of the Unemployment Compensation Commission holding that Streckfus is subject to the tax for unemployment compensation for the persons employed on its steamboats Admiral and Senator. The circuit court reversed the decision and the Commission appeals to this court. We find the Commission's decision was proper.

Streckfus is a Delaware corporation with its business office in St. Louis. It is engaged in the business of carrying passengers for hire on the Mississippi River and on other rivers. The Admiral operates out of St. Louis only. During the summer it makes excursion pleasure trips twice daily up and down the river from St. Louis. The Senator, having been released from the service of the United States Coast ██ Guard, is tied up at St. Louis in care of a small maintenance crew.

The only question for decision is whether Streckfus is exempt from the unemployment tax because of Article I, Section 1 of our Constitution which states: ". . . and the river Mississippi and the navigable rivers and waters leading to the same, shall be common highways, and forever free to the citizens of this State and of the United States, without any tax, duty, impost or toll therefor, imposed by this State."

A provision employing similar language is found in the Ordinance of 1787, "An ordinance for the government of the United States northwest of the river Ohio," adopted by Congress in July, 1787. 1 U. S. S. L. 51n. In paragraph IV we find: "The navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of the said territory as to the citizens of the United States, and those of any other states that may be admitted into the confederacy, without any tax, impost or duty therefor." Similar clauses applying to their navigable rivers are found in acts providing for the admission of a number of states into the Union. The United States Supreme Court has held the object of such a clause "was to preserve the rivers as highways equally open to all persons without preference to any, and unobstructed by duties or tolls, and thus prevent the use of the navigable streams by private parties to the exclusion of the public, and the exaction of toll for their navigation." Huse v. Glover, 119 U. S. 543. See also: Cardwell v. American Bridge Co., 113 U. S. 205; Willamette Iron Bridge Co. v. Hatch, 125 U. S. 1. Speaking of the effect of the clause in the Ordinance of 1787 Judge COOLEY said: ". . . the navigable waters of the [Northwest] territory were placed upon the same footing with the navigable waters of the United States, the use of which is forever free . . ." Attorney General ex rel. Benjamin v. The Manistee River Improvement Co., 42 Mich. 628, 4 N. W. 483.

The provision of our Constitution has the same object namely, the use of the Mississippi as a highway shall be free to all. No charge of any kind may be imposed for the use of the river in navigation.

Historical precedent supports this conclusion. In the Treaty of Peace between Great Britain and the United States of 1783 it was provided that ''the navigation of the river Mississippi from its source to the ocean, shall remain forever free and open to the subjects of Great Britain and the citizens of the United States.'' But with Spain holding the west bank of the Mississippi and the territory on both sides at New Orleans, navigation on the Mississippi was not free. Houck tells us a port of entry was established at New Madrid and all boats were compelled to land there and excise duties were imposed and collected by the Spanish Governor on all commodities descending the river. 2 History of Missouri, 336. A custom house was also set up at Natchez. The right of free deposit at New Orleans was denied. This upset the agricultural economy of our new settlements causing much bitterness and friction. It was this condition that ultimately led to the Louisiana Purchase which brought with it free navigation on the Mississippi which right had been jealously preserved ever since. A provision similar to the constitutional one we are considering is found in the Act of Congress adopted in 1812 changing the name of the Louisiana Territory to Missouri Territory and providing· for the government of the territory (2 U. S. Stat. 743, 28 Mo. R. S. A. 208) and in the act admitting Missouri into the Union. 3 U. S. Stat. 545, 28 Mo. R. S. A. 215.

The constitutional restriction is only against imposing a tax for the use of the river. It in no wise exempts those persons who happen to use the river from a tax imposed generally on all persons.

An unemployment compensation tax has been held to be ''An excise upon the relation of employment.'' Steward Machine Co. v. Davis, 301 U. S. 548. The tax is imposed uniformly on employers throughout the state. Sec. 9421 et seq. R. S. 1939. It is assessed against Streckfus because Streckfus is an employer, not because it uses the river. The fact that Streckfus' employees work on boats that ply the Mississippi is incidental and does not convert the tax into one for the use of the river. Merely because the employees are engaged in navigating the ▉ river does not make the tax an excise upon the use of the river. That is not the object or effect of the tax. Accordingly, we hold the constitutional provision does not exempt Streckfus from the unemployment compensation tax.

In People v. Setunsky, 161 Mich. 624, 126 N. W. 844, the court overruled the claim that a license tax imposed on boats used for commercial fishing violated the provisions of the Ordinance of 1787,

forbidding a tax for the use of the river. And see In re Los Angeles Lumber Products Co., 45 F. Supp. 77.

The judgment of the circuit court is reversed and the cause remanded with directions to enter a judgment affirming the decision of the Commission. All concur.