Bucklin Coal Mining Company, a Corporation, Appellant, v. Unemployment Compensation Commission of Missouri, and Carl J. Henry, Elmer John Keitel, Sr., and Harry P. Drisler, as Members of said Commission, and Michael J. Carroll, as Director of the Division of Employment Security of the Department of Labor and Industrial Relations of Missouri.—No. 40002.—201 S. W. (2d) 463.

Division Two, April 21, 1947

314

*Ragland, Otto, Potter & Embry* and *Ralph W. Street* for appellant.

*Charles F. Moseley* and *John L. Porter* for respondents; *Michael J. Carroll* of counsel.

BOHLING, C.—In this proceeding the Bucklin Coal Mining Company, appellant, attacks the assessment against it on September 1, 1942, by the Unemployment Compensation Commission of Missouri of certain past due contributions, with interest, of the Bucklin Coal Company and the resort to the experience of the Bucklin Coal Company in arriving at the rate of 3.6% of the wages paid for contributions by the Bucklin Coal Mining Company for the first two calendar quarters of 1942. Both companies were Missouri corporations. The assessment covered contributions due and unpaid for the years 1937 through June 30, 1942 (in the principal sum of $4,252.78 and interest of $1,553.92, total $5,806.70 as of August 29, 1942). Appellant contends that the Unemployment Compensation law and the action of the Commission violates State and Federal constitutional provisions in that it deprives appellant of its property without due process of law, denies to appellant the quiet protection of the law, impairs the obligation of contracts and operates retrospectively. Contributions payable under the Unemployment Compensation law have been considered: " 'An excise upon the relation of employment.' " Streckfus Steamers, Inc. v. Keitel, 353 Mo. 409, 412, 182 S. W. 2d 587, 588[2].

An important factual feature of the case is that the Commission found appellant, Bucklin Coal Mining Company, hereinafter referred to as Mining Company, to be the "successor employing unit" of Bucklin Coal Company, hereinafter referred to as Coal Company, within the provisions of Laws 1941, p. 596, Subsec. 9427(h).

E. J. Rychel, Jr., owned a majority of the stock of the Coal Company. Its property consisted of certain personal property useful in its mining activities, title to a 58 acre tract of land on which the mine was located, subject to a balance-due indebtedness of approximately $3500 secured by a mortgage, and coal mining rights on an adjoining 22 acres. C. W. Miller made an investigation of the business and affairs of the Coal Company for a month or more and personally inspected its property. He learned that the property was subject to between $10,000 or $12,000 in back taxes, penalties and interest, including the fact the Coal Company was in default on contributions due under the Unemployment Compensaton law. Nevertheless, on or about June 25, 1941, he exchanged his equity valued at $27,500 in certain real estate for the controlling stock in the Coal Company, Mr. Rychel, Jr.'s interest. Sometime thereafter a meeting was held at which new directors and officers were elected, the former officers having resigned. In September, 1941, Mr. Miller purchased Mr. Cantwell's (another stockholder) interest and held all the stock, except qualifying shares, of the Coal Company.

Appellant, the Bucklin Coal Mining Company, was incorporated July 25, 1941. Mr. Miller owned all the stock of the Mining Company, except qualifying shares, was the managing head of the Mining Company and designated its officers et cetera.

The Federal Government seized the personal property the first part of July and the Collector of Internal Revenue sold it on July 22, 1941, under a warrant of distraint for $1005, Mr. Miller bidding in the property. The rights of the Coal Company in the 22 acres of land were also seized under a warrant of distraint and sold in October, 1941, by the Collector to Mr. Miller, who bid it in at $50. Mr. Miller transferred this personal property and also the mining rights in the 22 acres to the Mining Company.

The Coal Company still held the 58 acre tract. After approximately four or five months, Mr. Miller caused the 58 acre tract to be transferred to the Mining Company. The Coal Company thereupon ceased to own property and its charter was permitted to lapse. Mr. Miller acquired his interest during the slack season. When the business opened up, the Mining Company commenced operations, and many of ▆▆▆ those who worked for the Coal Company returned and worked for the Mining Company.

Upon these facts, and others not necessary to set forth, the Commission found that Subsec. 9427(h) was applicable and that the employing unit "Bucklin Coal Mining Company" was for the purposes of the Unemployment Compensation law a continuation of the employing unit "Bucklin Coal Company." Accordingly, the contributions due from the Coal Company and in default were assessed against the Mining Company and the employment experience of the Coal

Company established the 3.6% rate for contributions from the Mining Company.

■ The point is made that the lien of the United States for the payment of Federal Internal Revenue taxes was paramount to any rights of the Unemployment Compensation Commission for the contributions assessed against appellant. The instant proceeding involves only the power of the Commission to make the assessment, not its collection and, if it may be collected, out of what assets it may be made. Appellant ignores the 58 acre tract. However, we consider the point irrelevant here.

■ It is contended that the Unemployment Compensation act (Ch. 52, Art. 2, R. S. 1939) is unconstitutional in that it authorizes the Commissioners to act in a quasi-judicial capacity, and that they so acted in the instant proceeding. Appellant says Laws 1941, p. 622, Sec. 9433, authorizes the Commission to establish ''a compensation fund'' separate and apart from all public moneys or funds of the State, and that Sec. 9424, R. S. 1939, provides for the payment of the Commissioners' salaries out of said fund. From this it is contended the Commissioners acted ''as investigator, prosecutor, party, judge, jury and hangman'' and thus deprived appellant of its property without due process of law under the Federal (Amend. 14) and State (Art. II, Sec. 30) constitutions, citing cases condemning the practice of one acting as judge in his own cause. College of Physicians Case, 123 Eng. Rep. 928, Tumey v. State of Ohio, 273 U. S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 50 A. L. R. 1243.

Appellant has misread the law. Section 9433, supra, established ''an unemployment compensation fund,'' which we understand is not used for the payment of salaries of the Commissioners. Subsection 9424(c), R. S. 1939, expressly provided for the payment of the Commissioners' salaries ''from the unemployment compensation administration fund.'' Consult Laws 1941, p. 628, Sec. 9434. Appellant has not established that the Commissioners acted as judges in a matter in which they had any pecuniary interest. They proceeded in conformity with the law as a fact finding body, and having ascertained the fact, administered the law prescribed by the General Assembly to the facts. Appellant cites no authority that this constitutes an exercise of the judicial power of this State in contravention of Art. 6 of the Constitution of 1875. Consult State ex rel. v. Harris, 353 Mo. 1043, 1048, 186 S. W. 2d 31, 33[3]; Lusk v. Atkinson, 268 Mo. 109, 116(I), 186 S. W. 703, 704(I); Kansas City P. & L. Co. v. Midland Realty Co., 338 Mo. 1141, 1148, 93 S. W. 2d 954, 958[6]; Charles C. Steward Machine Co. v. Davis, 301 U. S. 548, 57 S. Ct. 883, 81 L. Ed. 1279, 109 A. L. R. 1293; Carmichael v. Southern C. & C. Co., 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327, Annotated 109 A. L. R.. 1346.

■ Appellant states the assessment is void because it violates the 14th Amendment of the Constitution of the United States and Sections 4, 15, and 30 of Art. II of the Constitution (1875) of Missouri. Appellant argues "due solely to the fact that the owner of a majority of the stock of appellant owned a majority of the stock of the Bucklin Coal Company for a few days," appellant is placed in a classification different from similar corporations, and that this is unlawful discrimination and causes any enforcement of the assessment to deprive appellant of its property without the due process of law (U. S. Const., Amend. 14; Mo. Const., Art. II, Sec. 30) and to deny appellant the equal protection of the law (U. S. Const., Amend. 14).

■ We quote Laws 1941, p. 596, Subsec. 9427(h), italicizing the portion under attack:

"(h) Any individual, firm, corporation or employing unit which acquires the organization, trade, or business, or all of the assets thereof, of an employer, excepting, in any such case, any assets retained by such employer incident to the liquidation of his obligations, and in respect to which the commission finds that (i) immediately after such change the business and activity of the predecessor employing unit or units are conducted solely through the successor employing unit (ii) after such change, such successor is directly or indirectly owned or controlled by legally enforceable means by the same interests, as owned or controlled the predecessor employing unit prior to such acquisition (and *for the purpose of this subsection, direct or indirect ownership by the same interests of the majority of the voting shares of an employing unit shall, among other things, constitute prima facie evidence of control by legally enforceable means*) and (iii) the consideration of such two or more employing units as a single employing unit for the purposes of this section will not tend to defeat or obstruct the object and purpose of this law, shall stand in the position of such predecessor employing unit in all respects, including the predecessor's separate account, actual contribution and benefit experience, annual payrolls, and liability for current or delinquent contributions, interest and penalty, and contribution rate whether more or less than two and seven-tenths per centum . . ."

Some of appellant's cases differ on the facts and are not controlling. The two most strongly supporting appellant are Independent Gasoline Co. v. Bureau of U. C., 190 Ga. 613, 10 S. E. 2d 58, and Benner-Coryell Lbr. Co. v. Indiana U. C. Bd., 218 Ind. 20, 29 N. E. 2d 776. In Kellogg v. Murphy, 349 Mo. 1165, 1178 et seq., 164 S. W. 2d 285, 292 et seq., after reviewing authorities from other states, we refused to adopt the Georgia and Indiana holdings and considered a similar provision of Laws 1941, p. 578, Subsec. 9423(h), (4), as relating to an evidentiary factor and not the conclusive test of actual common control. (Consult cases like State ex rel. Kurz v. Bland, 333 Mo. 941, 944, 64

S. W. 2d 638, 639[2].) The Kellogg case sustained the Commission's holding that a general printing business having seven employees and a newspaper publishing business having four employees conducted at the same address, the former being owned by plaintiff as an individual and the latter being owned by a corporation of which plaintiff held 70 per cent of the stock, constituted a single employing unit having eight or more employees within the Missouri Unemployment Compensation act under the so-called "affiliate" or "common control" clause, Sec. 9423(h), (1, 4), R. S. 1939. State ex rel. Oklahoma E. S. C. v. Tulsa Flower Exchange (Okla.), 135 Pac. 2d 46, cited by appellant, reached a result supporting that contended for by appellant under differently worded statutory provisions but the reasoning therein sustains the conclusion of the Commission under the wording of the Missouri law and the facts of the instant case. See also Peerless Fixture Co. v. Keitel, 355 Mo. 144, 195 S. W. 2d 449, 454 [5], citing cases. The issues, while not identical, were very similar to the instant issue and the facts of the instant case are stronger against appellant. In Arado v. Keitel, 353 Mo. 223, 182 S. W. 2d 176, upon a change in the personnel of a partnership, the new partnership was held the successor employing unit of its predecessor partnership under Subsec. 9427(h), and entitled by reason thereof, we understand, to lower assessments.

Appellant's contention takes too narrow a view of the facts and does not apply the law as considered in Kellogg v. Murphy, supra. The facts adduced respecting the ownership of stock were not the sole, or necessarily the more important, determinative factor that appellant was a successor employing unit and stood in the position of its predecessor. Appellant's contention, restricted to stock ownership, fails to give consideration to the whole of Subsec. 9427(h). · In the instant case, the same individual held a majority of the stock in each corporation. In addition, he was the directing head of the Coal Company after acquiring his interest therein and of the Mining Company after it came ▉ into existence; the policies of the two companies, the directors and offices were of his selection; the predecessor's business was continued at the same place with the same property and, for all practical purposes, with the same employees. While such majority stock owner purchased the Coal Company's personal property and rights in the adjoining 22 acres at the Collector's sales for $1005 and $50, respectively, he gave a total of $27,500 for his majority stock interest in, and an additional consideration for other stock of, the Coal Company and, after the incorporation of the Mining Company, caused the 58 acres of the Coal Company to be transferred to the Mining Company without consideration. This left the Coal Company with no assets to meet its obligations. The facts justified the finding that the Mining Company was the successor employing unit of the Coal Company.

Subsection 9427 (h) appears to be an equitable and not a discriminatory enactment, seeking the substance of transactions within its scope and operating, according to the true facts, for the protection of the just interests of the public, the employee and the employer. The underlying legal principles have been applied to varied situations by administrative agencies and courts under the police power in piercing the shell to reach the realities of given transactions for the protection of the citizens and the advancement of the general welfare. Consult, among others, Chicago, M. & St. P. Ry. Co. v. Minneapolis Civ. & Comm. Assn., 247 U. S. 490, 501, 38 S. Ct. 553, 62 L. Ed. 1229; Anderson v. Abbott, 321 U. S. 349, 356 (II), 64 S. Ct. 531, 88 L. Ed. 1090; Helvering v. Alabama Asphaltic L. Co., 315 U. S. 179, 62 S. Ct. 540, 86 L. Ed. 775; Shepard v. Commissioner of Internal Revenue, 101 F. 2d 595, 599 [7]; 13 Am. Jur. 1124, Secs. 1236, 1241, 1244-1247; 19 C. J. S. 1253, Secs. 1593, 1630. The subsection applies to all employers subject to the Unemployment Compensation law. The italicized clause is peculiarly applicable to corporate ownership and, as applied to the facts of the instant case, was but an evidentiary and not a conclusive test for the application of the subsection to appellant. The distinction is based upon substantial grounds for the stated purpose and its application under the instant record is not established to infringe upon constitutional guaranties of due process and equal protection.

Appellant says the assessment "is retroactive and impairs the obligation of contracts." The amendment of Sec. 9427 in 1941 became effective July 1, 1941 (Laws 1941, p. 643, Sec. 19). Appellant was incorporated July 25, 1941, and commenced active operations August 2, 1941. From this appellant contends and develops the point that "the whole assessment is retroactive." Section 15 of Art. II of the Missouri constitution provides: "That no . . . law impairing the obligation of contracts, or retrospective in its operation . . . can be passed by the General Assembly."

The Unemployment Compensation law, so far as material here, provides for contributions to the State Unemployment Compensation fund from employers subject to its provisions at a rate of 2.7% of wages paid; subject, however, to authority vested in the Commission to classify individual employers in accordance with their actual employment experience under the act for the payment of contributions in conformity with specified standards therein prescribed. The Commission is required to maintain a separate account for each employer, crediting it with his contributions and charging it with benefits paid his employees. In the event an individual employer's experience under the act, as therein provided in detail, discloses that the contributions credited to his account are less than the benefits charged against it, his rate for contributions is to be 3.6%; but if the contributions exceed the benefits, depending on the percentage such excess bears to his

"average annual payroll," his rate for contributions is decreased, nothing being payable when such credits equal or exceed "15 per centum of his average annual payroll." See Laws 1941, p. 592, Subsecs. 9427 (b, 2), (C, 1, 3, A, B, C).

The assessment covered, first, contributions due from the Coal Company and in default from 1937 up to and including the 2nd calendar quarter of 1941; and, second, ▉▉▉ assessments for the 1st and 2nd quarters of 1942 representing the difference between a rate of 2.7% paid by appellant and 3.6% set by the Commission, being based upon the experience of the Coal Company under the Act. Said employment experience disclosed, as of December 31, 1941, that contributions in the amount of $928.57 had been credited and benefits in the amount of $7,521.81 had been charged against appellant's account.

It is evident that if the Mining Company be not the "successor employing unit" of the Coal Company within Subsec. 9427 (h) that the assessment under review could not stand. This is a factor distinguishing the instant case from the cases relied upon by appellant; Graham Paper Co. v. Gehner, 332 Mo. 155, 59 S. W. 2d 49; Murphy v. Limpp, 347 Mo. 249, 147 S. W. 2d 420, among others. With the Mining Company the successor employing unit to its predecessor Coal Company, the assessment against the Mining Company of contributions and interest due from the Coal Company prior to July 1, 1941, is to the same effect within the issues to be ruled as though the assessment were against the Coal Company, the Mining Company being but a continuation of the Coal Company that was in existence and in charge of the trade, business and assets from 1937 to July 1, 1941, for said purpose.

Now, with respect to that portion of the issue involving assessments based on the 3.6% rate against appellant for the 1st and 2nd quarters of 1942, and totaling approximately $220.00. Appellant contends for the 2.7% rate of Subsec. 9427(c), (3), (A), quoted in the margin.[1] Here, appellant is again confronted with the fact that it is the "successor employing unit" of its predecessor Coal Company, and that the contributions credited to its account are less than the benefits charged against its account, as stated hereinabove. That portion of Subsec. 9427(c), (3), (B)[2] directing the exaction of the

---

[1]"(A) Each employer's rate shall be two and seven-tenths per centum, unless and until there shall have been thirty-six consecutive calendar months immediately preceding the calculation date throughout which his account could have been chargeable with benefits." Laws 1941, p. 593.

[2]Subsec. 9427(c), (3), (B), Laws 1941, p. 594, reads: ". . . If, on such calculation date, or within a reasonable time thereafter as may be fixed by regulation, the total of his contributions, paid and credited on his own behalf for all past periods (preceding the calculation date), or for the past sixty consecutive calendar months (preceding the calculation date), whichever is more advantageous to such employer for the purposes of this paragraph, is less than the total benefits charged against his account during the same period, his rate shall be three and six-tenths per centum."

3.6% rate in such circumstances has been continuously in effect insofar as involved in the instant issue since the enactment of the Unemployment Compensation law in 1937 (Laws 1937, p. 586, Subsec. 6(C), (3), (b), (2).[3] Thus, the provision so far as material, has been carried forward as the law of the State since its original enactment, and as applied to the instant case was not retrospective nor was it new matter at all. Stouffer v. Crawford (Mo.), 248 S. W. 581, 584[2], citing Smith v. Dirckx, 283 Mo. 188, 198, 199, 223 S. W. 104, 106[3], 11 A. L. R. 510.

In addition, this 3.6% rate applied to the 1st and 2nd quarters of 1942, which were subsequent to the effective date of the amendment of 1941, and the fact that the rate was computed on the actual employment experience of the predecessor employing unit occurring prior to July 1, 1941, did not make the provision retrospective in a constitutional sense. See reasoning in Pratt & Whitney Air. Corp. v. Unemployment Comp. Comm., 354 Mo. 1017, 1022, 1024[3], 193 S. W. 2d 1, 3[3], 4[6], with respect to a somewhat similar amendment of 1943 to the law (Laws 1943, p. 915, Subsec. 9427(j) ).

The judgment is affirmed. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.

---

[3]Subsec. 6(C), (3), (b), (2), supra, reads: ". . . If the total of his contributions, paid and credited on his own behalf for all past period or for the past sixty consecutive calendar months, whichever period is more advantageous to such employer for the purposes of this paragraph, is less than the total benefits charged against his account during the same period, his rate shall be three and six-tenths per centum."

This was carried forward in the amendment of 1939 (Laws 1939, p. 904, Subsec. 6(C), (3), (b), (2), appearing as Subsec. 9427(C), (3), (b), (2), R. S. 1939, and in the form here involved in the amendment of 1941, supra.