CARL J. HENRY, ELMER JOHN KEITEL, SR., and HARRY P. DRISLER, Members of the UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI, Appellants, v. THOMAS MANZELLA, Respondent, MERCHANTS BANK, Garnishee.—No. 39750.—201 S. W..(2d) 457.

Court en Banc, April 21, 1947

*Charles F. Moseley* and *John L. Porter* for appellant; *Michael J. Carroll* of counsel.

*J. K. Owens* for respondent.

DOUGLAS, J.—The Unemployment Compensation Commission, whose members are appellants herein, assessed unemployment compensation taxes against Thomas Manzella, the respondent. Manzella ignored the assessment and refused to pay it. Under the provisions of the statute (Sec. 9436(g), R. S. 1939, Mo. R.S.A. as amended) the commission filed a certificate in the circuit court stating, in effect, that it had made an "Order of Assessment of Contributions, Interest, and Penalties" against Manzella, an individual, a delinquent, who resides in Jackson County and whose contributions, interest and penalties are past due and unpaid; that Manzella had been notified of the assessment by personal service; that Manzella did not file any petition for a hearing, and the assessment has become final; that the amount due is $965.44 with $269.12 interest, a total of $1,234.56. An execution was issued as authorized by the statute for the collection of the tax, and a writ of garnishment served on Manzella's bank. Thereafter both Manzella and the bank filed motions to quash which were consolidated, heard, and sustained by the trial court, and the execution was ordered quashed.

This case was before us at an earlier stage in an original proceeding in prohibition to test the jurisdiction of the circuit court *to entertain* a motion to quash the execution issued on the certificate of the commission. State ex rel. Keitel v. Harris, 353 Mo. 1043, 186 S. W. (2d) 31. We held the circuit court had such jurisdiction.

Manzella's motion to quash is based on these grounds: (1) the execution is not based upon a judgment rendered by a court; (2) that Section 9436(g), supra, is unconstitutional because it permits the ▮▮▮ commission unlawfully to exercise judicial power in violation of Article VI, Section 1 of the Constitution of 1875; (3) that the issuance of the execution takes his property without due process of law contrary to both State and Federal Constitutions; and (4) that he does not owe the amount stated but a lesser amount, namely $176.00 plus interest which he has offered to pay. The bank's motion is on the ground the execution is not based on a final judgment.

The statutory procedure for the collection of contributions is briefly this: Under Section 9436 R. S. 1939, Mo. R.S.A. (Amended Laws 1939, 1941, 1943) when contributions have been determined but not paid when due, it becomes the duty of the commission to notify the

delinquent by personal service or registered mail of the amount due. The delinquent may then petition for reassessment whereupon the commission shall give the delinquent a hearing. Its decision on the petition for reassessment is subject to rehearing and reconsideration. After the commission's decision has become final any aggrieved party may have judicial review in the circuit or common pleas court. An appeal is authorized from the decision of the trial court. Sec. 9432A., Mo. R. S. A. Laws 1941, p. 566 (now Sec. 9432B, Laws 1943, p. 917, reenacted Laws 1945, S. B. No. 247).

For the collection of contributions which have been assessed and become final Section 9436 provides:

''(e) (8) The certificate of assessment which, under the provisions of this section, may be filed with the clerk of the circuit court shall, upon such filing, thereafter be treated in all respects as a final judgment of the circuit court against the delinquent . . .''

''(g) In any case in which any contributions, interest or penalty imposed under this law is not paid when due and the assessment of which has become final, the Commission may file for record in the office of the clerk of the circuit court in the county in which the delinquent owing said contribution, interest or penalty resides, . . . a certificate specifying the amount of the contribution, interest and penalty due and the name of the delinquent liable for the same and it shall be the duty of the clerk of the circuit court to file such certificate of record and enter the same in the record of the circuit court for judgments and decrees under the procedure prescribed for filing transcripts of judgments. From the time of the filing of such certificate, the amount of the contribution, interest and penalty specified therein shall have, the force and effect of a judgment of the circuit court until the same are satisfied by the Commission or its duly authorized agents. Execution shall thereupon be issuable at the request of the Commission, its agent or attorney as is provided in cases of other judgments. . . .''

In considering the constitutional objections directed against the above procedure we must bear in mind the statutes under examination were enacted for the purpose of assessing and collecting a tax levied by the state under its sovereign power. It is settled that an unemployment compensation tax is an excise upon the relation of employment. A. J. Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S. W. (2d) 184; Lucas v. Murphy, 348 Mo. 1078, 156 S. W. (2d) 686; Streckfus Steamers, Inc. v. Keitel, 353 Mo. 409, 182 S. W. (2d) 587; Steward Machine Co. v. Davis, 301 U. S. 548.

Statutes for levying taxes and providing the means of enforcement are within the unquestioned power of the legislature. Summary remedies have been allowed for the collection of its revenues by the government. The method of recovering delinquent taxes is wholly

statutory, and where no constitutional provision is violated the legislature has the power to choose its own method of collection. Cooley, Taxation, 4th Ed. sec. 1326.

". . . Section 1, Article X of our Constitution broadly confides the *whole taxing power* to the Legislature, which necessarily includes the collection of taxes. Throughout history the power has been exercised sometimes purely administratively, sometimes partially through the courts, but never according to the fixed rules of the common law or code of civil procedure if ▇▇▇ the Legislature had prescribed a different course . . ." Spitcaufsky v. Hatten, 353 Mo. 94, 182 S. W. (2d) 86.

The test to determine whether a taxing statute denies due process is whether a hearing has been provided for at some stage before the proceedings become final. State ex rel. Keitel v. Harris, supra. "If the taxpayer be given an opportunity to test the validity of the tax at any time before it is made final, whether the proceedings for review take place before a board having a quasi-judicial character, or before a tribunal provided by the state for the purpose of determining such questions, due process of law is not denied." Hodge v. Muscatine County, 196 U. S. 276.

There can be no doubt but that in view of this established principle the statutory procedure for assessing and collecting the unemployment tax observes fully a taxpayer's right of due process. He is granted a hearing before the commission and thereafter complete judicial review before his obligation to pay the tax becomes final. Compare Bucklin Coal Mining Co. v. Unemployment Compensation Comm., 53 F. Supp. 484.

▇▇ The next question is whether the provision clothing the commission's certificate when filed in the circuit court with "the force and effect of a judgment of the circuit court" constitutes in itself an unlawful grant of judicial power to the commission. We are of the opinion it does not. This provision merely authorizes the commission to enforce the collection of the tax by the same statutory means used to collect a judgment. Such bare authority calls for no exercise of judicial power by the commission. We observed in State ex rel. Keitel v. Harris, supra, that the commission's certificate derived the qualities of a judgment (for the purpose of collection only) from the court in which the certificate was filed, and not through any authority vested in the commission. If there is any judgment it is merely a tax judgment. It is not and could not be a "circuit court judgment." Nor could the legislature thus create a circuit court judgment. A circuit court judgment may result only from the judicial action of such a court.

This method of collecting an excise tax without first a trial before, and a judgment rendered by, a court is novel only in its employment of a sheriff acting under execution instead of a tax collector acting

under a tax warrant or tax bill. Excise taxes "may be collected by summary process whereby the collector may without judicial formality when an excise tax is not paid within a specified time seize and sell as much of the property of the delinquent as is necessary to pay the tax and costs." 51 Am. Jur. Taxation, sec. 989. "This method of collecting taxes is one of the most ancient known to the law, and has frequently received the sanction of the courts. Murray's Lessee v. Hoboken Land etc. Co., 18 How. 272, 276; Springer v. United States, 102 U. S. 586; Cooley on Taxation, 302; Palmer v. McMahon, 133 U. S. 660." Scottish Union & Nat. Ins. Co. v. Bowland, 196 U. S. 611. Unemployment taxes in the State of Washington may now be collected "by the distraint, seizure and sale of the property, goods, chattels and effects of said delinquent employer." State ex rel. Mulhausen v. Superior Court for Thurston Co., 22 Wash. (2d) 811, 157 Pac. (2d) 938.

In Bull v. United States, 295 U. S. 247, discussing the collection of taxes generally, the court said: "Default in meeting the obligation calls for some procedure whereby payment can be enforced. The statute might remit the government to an action at law wherein the taxpayer could offer such defense as he had. A judgment against him might be collected by the levy of an execution. But taxes are the life blood of government, and their prompt and certain availability an imperious need. Time out of mind, therefore, the sovereign has resorted to more drastic means of collection. *The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt.*" (Our emphasis.)

In 1867 the North Carolina Supreme Court held under a procedure somewhat analogous to the one here that "the tax list is a judgment against every person for the amount of the tax, and the copy [of the list] delivered to the sheriff is an execution put into his hands commanding him to collect the amount . . ." Huggins v. Hinson, 61 N. C. (Phillips-Law) 126. And see to the same effect Simpson v. Warren, 106 Fla. 688, 143 So. 602, 144 So. 324.

In a recent case in California we find the same scheme applied to a situation identical for all practical purposes to the one before us. There the Retail Sales Tax Act provided that when the tax, interest or penalty imposed under the act was not paid when due the board could file in the office of the county clerk a certificate specifying the amount due. The county clerk immediately upon the filing of such certificate was required to enter a judgment against the retailer for the amount set out in the certificate. Execution issued upon request of the board in the same manner as executions issued upon other judgments. The only difference between that procedure and ours is the additional step required in having the county clerk ministerially enter a judgment.

In that case it was contended that "section 26 of the act [containing the procedure we have described] offends the constitutional due process clauses in two respects, namely, that a personal judgment is permitted to be entered against the retailer without provision for prior personal notice and hearing in a court as provided by the Code of Civil Procedure, and that the section confers on the Board of Equalization arbitrary and unreasonable powers." It was further argued that the "judgment" provided for should not be entered without personal service and a judicial hearing.

The Supreme Court of California disposed of these contentions as follows: "Obviously if an action of a court or other judicial tribunal be necessary for a judgment for the collection of taxes, the State is bound by the provisions applicable to the conduct of such action, and by the general law governing jurisdiction of parties and subject matter. But as long standing as the common law itself is the rule that a more summary method may be provided for the collection of taxes due to the sovereign than is provided for the recovery of judgment for debts between private citizens. This power of government received early recognition in this country."

That court, after reviewing cases involving summary remedies for the collection of delinquent taxes, further said: "The fact the word 'judgment' was used to designate the method of the summary procedure does not of itself require all the antecedent steps in a judicial tribunal usually applicable when private debts are the subject of collection. The foregoing authorities are clear to the effect that the sovereign may adopt any appropriate procedure known to the law for the purpose of collecting taxes and that it is not required to provide for a hearing in a judicial tribunal before it may use the processes which follow upon the entry of a judgment in such tribunal. It is plain that a hearing in a judicial tribunal was not intended and is not required by the statute here in question. The use of the word 'judgment' in tax collection provisions for the purpose of calling in operation summary execution on and sale of property subject to tax liens is not strange nor unfamiliar. . . . As indicated, the Legislature may employ such procedure without providing for a judgment ordered by a judicial tribunal." People v. Skinner, 18 Cal. (2d) 349, 115 P. (2d) 488, 149 A.L.R. 299.

Turning back to the case before us we do not find it necessary to discuss the final point raised by Manzella in the motion to quash, that he does not owe the amount certified but does owe a lesser amount which he stands ready to pay. Manzella had his opportunity to try out that issue before the commission, then to have a review by the circuit court and then to have still another review in an appellate court. He declined to avail himself of such opportunity afforded him by the express terms of the statute. It is too late to try the adminsitrative proceeding on the merits on a motion to quash an execution.

See State ex rel. Keitel v. Harris, *supra*. Moreover, Section 9432B provides that judicial review of any decision of the commission shall be permitted ▮ only after the administrative remedies have been exhausted.

The cases relied on by Manzella are not apposite. They deal chiefly with the Public Service Commission and properly hold the legislature may not under our constitution invest an administrative body or even a quasi-judicial body with functions which are purely judicial.

The judgment of the trial court sustaining the consolidated motion to quash the execution and summons of garnishee should be *reversed* and *the cause remanded with directions* to dismiss such motion.

It is so ordered.

*Conkling, Clark, Ellison* and *Leedy JJ.* and *Tipton, C. J.* concur. *Hyde, J.* concurs in separate opinion in which *Leedy, J.* and *Tipton, C. J.* also concur.

▮ HYDE, J. (concurring).—I agree with the result reached in the opinion of Douglas, J. herein, on the ground that the certificate authorized to be filed in the office of the Circuit Clerk by Section 9436 R. S. 1939, as amended Laws 1945, pp. 944-948, is merely the recording of a tax judgment and lien resulting from the findings and orders of the taxing authority. However, I do not agree that it is in any sense a judgment of the Circuit Court, and consider the portions of this statute, which says it is, to be unconstitutional.

I agree that the Legislature may authorize such a tax judgment and lien to be recorded in the office of the Circuit Clerk and may provide for the sheriff to collect it, using the process of execution issued by the Circuit Clerk to do so. I also agree that the requirements of due process are met by the statutory provisions for judicial review of the Commission's findings, and by the right to challenge the fundamental sufficiency of the tax proceedings by motion to quash execution, as permitted by our ruling in State ex rel. Keitel v. Harris 353 Mo. 1043, 186 S. W. (2d) 31. I do not agree that the certificate is, or can be, effective as a judgment of the Circuit Court because it is my view that no judgment of the Circuit Court can be rendered except by that Court in session.

The Commission is a part of the executive branch of the government; and to authorize it by the mere act of filing a certificate (evidencing its tax judgment) to enter a judgment for the Circuit Court to be considered as a final judgment of the Circuit Court was in direct conflict with Article III of the Constitution of 1875 then in force. (Now Art. II, Const. of 1945.) This article provides for three distinct departments of government, and says: "no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging

to either of the others." I cannot conceive of a clearer violation than to attempt to authorize a department of the executive branch to enter a judgment for a court of general jurisdiction by merely filing a certificate with its clerk. I, therefore, think it is clear that the portion of Section 9436(e) (8) is unconstitutional and invalid, which says that the certificate "shall, upon such filing, thereafter *be treated in all respects as a final judgment of the circuit court* against the delinquent"; and likewise that part of Section 9436(g) which says: "From the time of the filing of such certificate, the amount of the contribution, interest and penalty specified therein *shall have the force and effect of a judgment of the circuit court* until the same are satisfied by the Commission or its duly authorized agents."

Nevertheless, with these portions of Section 9436 stricken from it, the remainder is complete and capable of being executed and is valid. [State ex rel. Fire District of Lemay v. Smith, 353 Mo. 807, 184 S. W. (2d) 593.] This would leave in effect substantially the same procedure as that indicated in the California case cited. [People v. Skinner, 18 Cal. (2d) 349, 115 Pac. (2d) 488.] It is not essential to the plan for collection by execution of the assessment made by the Commission that there be a judgment of the Circuit Court thereon. A tax judgment and lien is sufficient, as pointed out in the principal opinion, so that there remains a complete and workable law without any circuit court judgment. I think we should plainly hold that no administrative tribunal can ever be authorized to make its findings or orders become a court judgment solely by its own act without any action of the court whatever. *Leedy, J.,* and *Tipton, C. J.,* concur.