**STATE ex rel. Robin HILBURN, Respondent,**

v.

**Sherry STAEDEN (Ladlee), Respondent,**

**Jeremiah W. (Jay) Nixon, Attorney General, Intervenor–Appellant.**

No. SC 84354.

Supreme Court of Missouri, En Banc.

Dec. 24, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., Jefferson City, for appellant.

Robert M. Sweere, Kimberly J. Lowry, Springfield, Michael Kisling, Jefferson City, for respondent.

STEPHEN N. LIMBAUGH, JR., Chief Justice.

The Attorney General, as intervenor, appeals a judgment of the circuit court setting aside a "Judgment and Order" for child support entered by an administrative hearing officer of the Division of Child Support Enforcement (DCSE). The circuit court, relying on *Slay v. Slay*, 965 S.W.2d 845 (Mo. banc 1998), and *Fowler v. Fowler*, 984 S.W.2d 508 (Mo. banc 1999),

held that section 454.490, RSMo 2000,[1] is unconstitutional because it allows such administrative orders to be entered with "all the force, effect, and attributes of a docketed order or decree of the circuit court," but without the signature of a judge of the circuit court. Because this case presents a challenge to the validity of a statute, this Court has jurisdiction. Mo. Const. art. V, sec. 3. The judgment is reversed.

The facts of the case and the procedural history are set out at length in the opinion in an earlier appeal, *State ex rel. Hilburn v. Staeden*, 62 S.W.3d 58 (Mo. banc 2001), in which this Court dismissed the appeal because the circuit court had not yet entered a final, appealable judgment. Suffice it to say for purposes of the new appeal that a judgment, proper as to form, has now been entered vacating and enjoining enforcement of a "Judgment and Order" for payment of child support by respondent Staeden to respondent Hilburn as entered by a DCSE administrative hearing officer.

■ In determining whether a legislative enactment oversteps constitutional bounds, this Court proceeds under the assumption that the statute bears no constitutional flaw. *Suffian v. Usher*, 19 S.W.3d 130, 134 (Mo. banc 2000). This presumption of constitutionality compels us to "adopt any reasonable reading of the statute that will allow its validity and to resolve all doubts in favor of constitutionality." *Gen. Motors Corp. v. Dir. of Revenue*, 981 S.W.2d 561, 566 (Mo. banc 1998). At all times, the party challenging the validity of the statute bears the burden of proving that the statute "clearly and undoubtedly contravenes the constitution and plainly and palpably affronts fundamental law embodied in the constitution." *Suffian*, 19 S.W.3d at 134.

■ Section 454.490 is part of Missouri's administrative child support enforcement scheme that was enacted in response to federal conditional spending requirements set forth in Title IV of the Social Security Act. *See Dye v. Div. of Child Support Enforcement*, 811 S.W.2d 355, 359 (Mo. banc 1991). Under Title IV–D, in order to qualify for federal funding for temporary assistance to needy families, states are required to have federally approved child support enforcement mechanisms in place that expedite the implementation of child support orders. *See generally*, 42 U.S.C. sec. 666 (detailing procedures for enforcing child support orders). One such requirement is found in 42 U.S.C. sec. 666(c)(1)(F), which requires laws and procedures that permit income to be withheld "without the necessity of obtaining an order from any other judicial or administrative tribunal."

Through section 454.490, Missouri complies with this federal mandate. That section provides that upon docketing, an administrative child support order "shall have all the force, effect and attributes of a docketed order or decree of the circuit court, including, but not limited to, lien effect and enforceability by supplementary proceedings, contempt of court, execution, and garnishment." Thus, pursuant to section 454.490, an administrative child support order may be enforced without obtaining a court order.

However, though section 454.490 authorizes the enforcement of an administrative support order that has not been signed by a judge, that is not to say that the statutory scheme does not permit judicial involvement. In fact, chapter 454 provides numerous safeguards on administratively entered support orders that guarantee the

1. All statutory citations are to RSMo 2000 unless otherwise indicated.

right to have child support matters ultimately determined by a court of competent jurisdiction. Under the statutory scheme, the Director of the DCSE may issue a Notice and Finding of Financial Responsibility to a parent owing child support, but only if a court has not previously entered an enforceable support order. Sec. 454.470. A party aggrieved by any allegation contained in the Notice and Finding of Financial Responsibility may request a hearing before an administrative hearing officer, whose findings and orders become the decision of the Director, Sec. 454.475, but any party dissatisfied by the decision may then file a timely petition for judicial review, where all legal issues are determined de novo and only credibility findings are entitled to deference. *Id.; Dye*, 811 S.W.2d at 359. Finally, if an aggrieved party takes advantage of the available judicial review, the court's determination of support duty prospectively supersedes that of the DCSE. Sec. 454.501.

In *Dye v. Division of Child Support Enforcement*, 811 S.W.2d 355 (Mo. banc 1991), the procedures outlined above survived a constitutional challenge that alleged a violation of the separation of powers doctrine. This Court held that the Missouri child support enforcement scheme did not constitute an unconstitutional delegation of judicial power, noting that "the limitation of the authority of the administrative agency, together with the right of judicial review, saves the statute from the separation of powers argument." *Id.* at 359.

■■■ However, the availability of judicial review does not end the inquiry, for although administrative entities may constitutionally perform certain functions traditionally reserved to the judiciary, administrative agencies may not pronounce judgments. *See Percy Kent Bag Co. v. Mo. Comm'n on Human Rights*, 632 S.W.2d 480, 484 (Mo. banc 1982). The entry of a judgment remains the "the quintessential function of a court." *Carr v. North Kansas City Beverage Co.*, 49 S.W.3d 205, 207 (Mo.App.2001); *see also Div. of Classification and Treatment v. Wheat*, 829 S.W.2d 581, 583 (Mo.App. 1992). Although clearly an agency may not act as a "a court in the constitutional sense," *State Tax Comm'n v. Admin. Hearing Comm'n*, 641 S.W.2d 69, 75 (Mo. banc 1982), this Court has recognized that administrative bodies may exercise judicial functions that are "incidental and necessary to the proper discharge" of their administrative duties. *Id.* (quoting *Liechty v. Kansas City Bridge Co.*, 162 S.W.2d 275, 279 (Mo.1942)). At the least, the establishment of a means of ensuring compliance with child support orders is incidental to the proper discharge of the DCSE's duty to administer child support collection. Section 454.490 merely provides an enforcement mechanism, and does not, as respondent Hilburn contends, transform administrative orders into circuit court judgments.

This Court is of the opinion that the "force and effect" language contained in section 454.490 need not be construed as authorizing the entry of a court judgment by an administrative agency. Although respondent Hilburn correctly asserts that by endowing an administrative order with the "force, effect and attributes of a docketed order or decree of the circuit court," the legislature has effectively engrafted characteristics of a circuit court judgment upon a decision of the executive branch, there is no change in the fundamental nature of the administrative decision. To be sure, the administrative order derives the qualities of a circuit court judgment, but it does so only to the extent necessary to permit its enforcement by the court. It

does not become an actual judgment of the court absent judicial review.

In fact, in reviewing similar language in a different statute, this Court has previously recognized the distinction between judicial enforcement of an administrative decision and the attempted legislative authorization of non-judicial judgments. In *Henry v. Manzella*, 356 Mo. 305, 201 S.W.2d 457 (banc 1947), this Court held that a statutory provision that allowed an administrative order of assessment, upon filing in the circuit court, to be treated in all respects as a final judgment of the circuit court, did not authorize administrative entry of a circuit court judgment or constitute the unlawful grant of judicial power. *Id.* at 460. The Court reasoned that the provision merely permitted judicial enforcement of the order and that "[s]uch bare authority calls for no exercise of judicial power...." *Id. Accord Div. of Employment Sec. v. Cusumano*, 809 S.W.2d 113, 115 (Mo.App.1991).

As in *Manzella*, the statutory grant of authority to enforce an administrative order by the same means used to enforce a judgment does not represent executive branch encroachment on the exclusive power of the judiciary. Only a court can enforce administrative orders so that they have the effect of a judgment. *See Percy*, 632 S.W.2d at 484. Thus, administrative agencies do not exceed their constitutional authority by utilizing the court system as a means of enforcing such orders, provided that the orders are subject to direct review by the courts. *See Manzella*, 201 S.W.2d at 460; *Asbury v. Lombardi*, 846 S.W.2d 196, 200 (Mo. banc 1993).

*Slay v. Slay*, 965 S.W.2d 845 (Mo. banc 1998), and *Fowler v. Fowler*, 984 S.W.2d 508 (Mo. banc 1999), do not dictate a contrary conclusion. In *Slay* and *Fowler*, the Court held that "judgments" signed by family court commissioners do not constitute final and appealable judgments because judgments can only be entered by judges who hold office under article V of the Missouri Constitution. *Slay*, 965 S.W.2d at 845; *Fowler*, 984 S.W.2d at 511. Implicit in these decisions was a determination that the statute authorizing the purported judgments violated article V. *State ex rel. York v. Daugherty*, 969 S.W.2d 223, 224 (Mo. banc 1998).

The distinction between *Slay* and *Fowler*, and the present case, lies in the language of the statutes at issue, as well as the nature of the authority imparted by the statutes. In *Slay* and *Fowler*, the challenged statute, section 487.030, RSMo Supp.1997, provided that "findings and recommendations of the [family court] commissioner *shall become* the judgment of the court when entered by the commissioner ...." (emphasis added). This provision was seen as a legislative attempt to "transmogrify the findings and recommendations of a commissioner into a 'judgment of the court,'" and consequently deemed a nullity. *Slay*, 965 S.W.2d at 846 (Holstein, J., concurring). In contrast, section 454.490 does not, by its terms, purport to alter the very nature of an administrative child support order. Rather, it merely ascribes to it those qualities necessary to permit its enforcement. In other words, section 454.490 does not transform the DCSE's order into a court judgment, but merely allows it to be enforced as such. Although it could be said that an administrative order that has the effect of a judgment is indeed a judgment, there is still a technical distinction.

In addition, the structure of our Constitution, as well as our previous interpretations approving the statutory delegation to administrative agencies of certain functions normally associated with the judiciary, distinguishes *Slay* and *Fowler* from the

present controversy. As noted, *Slay* and *Fowler* held that a family court commissioner—a judicial branch officer who is not an article V judge—could not enter judgments, as this power is assigned exclusively to article V judges. In contrast, the challenge here is to an executive branch officer's exercise of a judicial function—the utilization of the court system as a means of enforcing an administrative agency determination.

■ Exclusive powers of the judiciary include the ability to render judgments and conduct judicial review. *See Percy*, 632 S.W.2d at 484; *Lederer v. State, Dept. of Soc. Servs., Div. of Aging*, 825 S.W.2d 858, 863 (Mo.App.1992). Section 454.490 does not place either of these exclusive powers in the hands of the executive. It does not delegate an exclusive judicial power, but merely allows a court to enforce an administrative decision.

Accordingly, this Court holds that section 454.490's provision allowing administrative orders to be entered with "all the force, effect, and attributes of a docketed order or decree of the circuit court" is not unconstitutional. The judgment of the circuit court is reversed, and the case is remanded for reinstatement of the administrative order of child support.

All concur.