STATE of Missouri ex rel. FAMILY SUPPORT DIVISION, Petitioner–Appellant,

v.

Cynthia A. FOSTER, Respondent–Respondent.

No. 26441.

Missouri Court of Appeals, Southern District, Division One.

Aug. 12, 2005.

Petition for Rehearing and Transfer Denied Sept. 2, 2005.

James Owen Kjar, Shipley & Kjar, L.L.C., Warsaw, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO, and Deborah L. Price, Asst. Atty. Gen., St. Louis, MO, for Respondent.

JAMES K. PREWITT, Judge.

The Family Support Division of the Department of Social Services ("Agency") appeals from a judgment of the trial court reversing and remanding an administrative decision ordering Cynthia A. Foster ("Mother") to pay child support for Cody D. Foster ("Child") and provide medical insurance for Child.

Mother took custody of Child at age five months. Child, born on May 11, 1994, was diagnosed with a mental illness resulting from his birth parents' drug abuse. Child receives Supplemental Security Income ("SSI"). Mother adopted Child in 2000, four years prior to the administrative hearing.

Mother stayed at home in order to take care of Child. On October 9, 2003, the State took custody of Child, due to Mother's inability to provide for him. Mother then took a part-time position at First Choice Administrators that paid $9.50 per hour. On November 23, 2003, Mother was terminated from this job.

Agency prepared a Notice and Finding of Financial Responsibility on December 16, 2003, ordering Mother to provide insurance and child support totaling $321.00 per month. Mother then requested a hearing to contest the Agency's findings. At the January 29, 2004 hearing, Mother testified she began employment with Citizen's Memorial Healthcare ("Citizen's") in January of 2004, for $8.93 an hour. Mother was ineligible for insurance with Citizen's until May 1, 2004, and was not going to enroll Child at that time since she considered the plan "quite costly." Citizen's coverage would cost $47 per pay period for two people.

In its Findings, Agency determined Mother's monthly gross income was $1,548, that she owed $102 for health insurance and was entitled to a credit for that, and she owed $304 in child support. Agency determined the initial Form No.14 calculation was incorrect, and a new calculation was necessary. It ordered Mother to pay $304 for child support and to "name and maintain child as a dependent on her health insurance policy." On April 14, 2004, Mother filed a Petition for Review of Administrative Decision.

On July 1, 2004, the trial court reversed and remanded the Agency's decision, concluding that Form No. 14:

> was not designed, implemented or intended to be used in a case involving third party custody and that Form 14 fails to provide directions for use in a case involving third party custody, the use of Form 14 by the Agency in the Decision to determine the presumed correct amount of child support and the lack of rebuttal of that presumption is arbitrary, capricious, and unreasonable.

The Agency filed Notice of Appeal on August 5, 2004, but Mother was required to, and did, file the initial brief here.[1]

"In an appeal from a circuit court's reversal of an administrative agency's decision, this court reviews the agency's decision." *Garrett v. Mo. Dep't of Soc. Servs.*, 57 S.W.3d 916, 917 (Mo.App.2001). The

---

1. Rule 84.05(e) states: "If the circuit court reverses a decision of an administrative agency and the appellate court reviews the decision of the agency rather than of the circuit court, the party aggrieved by the agency decision shall file the appellant's brief and reply brief, if any, and serve them within the time otherwise required for the appellant to serve briefs. The party aggrieved by the circuit court decision shall prepare the respondent's brief and serve it in a time otherwise required for the respondent to serve briefs."

reviewing court must examine the record in the light most favorable to the administrative decision. *Clark v. Reeves*, 854 S.W.2d 28, 31 (Mo.App.1993). The usual scope of review is whether the decision is supported by competent and substantial evidence on the record as a whole. *Chrismer v. Mo. Div. of Family Servs.*, 816 S.W.2d 696, 700 (Mo.App.1991). When its decision involves the interpretation of law and application of the law to undisputed facts, the court forms its own independent conclusions. *Collins v. Dep't of Soc. Servs., Family Support Div.*, 141 S.W.3d 501, 504 (Mo.App.2004).

█ In her first point, Mother contends the Agency proceedings were in error for applying Form No. 14 to a third-party custody situation because Form No. 14's language only applies to child support between parents. Agency counters that all child custody awards may be calculated using Form No. 14.

█ Under the directions for use of Form No. 14, parties required to complete said form are "[t]he parent obligated to pay support and the parent entitled to receive support[.]" *See also* Rule 88.01. Despite this instruction, the Agency is authorized by § 454.490.3, RSMo 2000, to order child support payments with the same force and effect of a circuit court. *State of Missouri ex rel. Hilburn v. Staeden*, 91 S.W.3d 607, 609 (Mo.banc 2002). The Agency is granted authority to enforce child support payments by the legislature. Section 454.400, RSMo 2000. This enforcement is subject to judicial review. *Hilburn*, 91 S.W.3d at 609–10.

"The Missouri Supreme Court shall have in effect a rule establishing guidelines by which any award of child support shall be made in any judicial or administrative proceeding[,]" and "[s]aid guidelines shall contain specific, descriptive and numeric criteria which will result in a computation of the support obligation." Section 452.340.8, RSMo 2000. Supreme Court Rule 88.01(a) grants administrative agencies the right to determine child support payments using "all relevant factors, including statutorily relevant factors." Rule 88.01(b) makes the amount calculated a rebuttable presumption. Section 454.400, RSMo 2000 establishes the Division of Child Support Enforcement "to administer the state plan for child support enforcement[,]" including the ability "to adopt, amend and repeal rules and regulations." Section 454.400.2(5), RSMo 2000.

Under this authority, 13 CSR 30–5.010 (2004) sets forth the Agency's method to calculate child support payments between parents or any custodial party. This regulation applies to establishing or modifying child support obligations. Calculation methods include the use of Form No. 14, under subsection 13 CSR 30–5.010(B) (2004), as well as available financial information. 13 CSR 30–5.010 (2004). The agency "may issue a notice and finding of financial responsibility to a parent who owes state debt or is responsible for the support of a child on whose behalf the custodian of that child is receiving support enforcement services[.]" Section 454.470.1, RSMo 2000.

The amount of child support calculated pursuant to Form No. 14 "is the amount of child support to be awarded in any judicial or administration proceeding for . . . child support." Rule 88.01. *See also State ex rel. Dept. of Soc. Servs. Div. of Child Support Enforcement v. Kost*, 964 S.W.2d 528, 529 (Mo.App.1998).

We conclude the legislature and the Missouri Supreme Court intended that Form No. 14 cover all administrative child support, including that such as this. The Agency did not err by using Form No. 14

in its calculation of Mother's child support obligation. Point I is denied.

■ In her second point, Mother contends that Agency's determination that she owes $304 per month in child support is "arbitrary, capricious, and unreasonable" because it considered Child's SSI payment as a non-relevant factor in its calculation.

■ The directions for use of Form No. 14 state, in part: "Excluded from gross income is ... supplemental security income (SSI) benefits[.]" SSI eligibility is based on need and paid to families of disabled children "to ensure that the recipient's needs are met at a subsistence level." *Kost,* 964 S.W.2d at 530. "SSI benefits received for a disabled child are intended to supplement other income, not substitute for it." *Id.* Monthly SSI benefits received do not diminish the child support contribution required by the non-custodial parent for care and accordingly, any child support obligation is not impacted by the receipt of SSI on the disabled child's behalf. *Id.* Point Two is denied.

The judgment is reversed and the cause remanded to the trial court to set aside the judgment and enter judgment affirming the decision of the Family Support Division of the Department of Social Services.

GARRISON, P.J., concurs.

RAHMEYER, J., files separate dissenting opinion.

NANCY STEFFEN RAHMEYER, Judge.

I respectfully dissent. I believe this case does not come within section 452.340.8 or section 454.400 [1] and, thus, is a case of

first impression. As such, I would find that Rule 88 [2] and the use of the Form No. 14 are not warranted in a third-party custody arrangement.

I arrive at this conclusion because chapter 452 is entitled "Dissolution of Marriage, Divorce, Alimony and Separate Maintenance" and concerns itself primarily with dissolution and custody matters. The issues involving children in foster care are not contained within these sections of the statute. Likewise, section 454.470, which is in the chapter entitled "Enforcement of Support Law," provides that the director may issue a notice and finding to a parent who owes a state debt or who is responsible for the support of a child on whose behalf the custodian of that child is receiving support enforcement services from the division. Section 454.465 determines what a "state debt" is:

a payment of public assistance by the division of family services to or for the benefit of ... the caretaker of the child, creates an obligation, to be called "state debt," which is due and owing to the department by the parent, or parents, absent from the home where the dependent child resided at the time the public assistance was paid.

I do not believe either prong is at issue in this case with a child who was in the custody of the Benton County Division of Family Services.[3] There is nothing in the record to indicate that a state debt was proven or plead, nor was there any indication that the custodian of the child was receiving support enforcement services from the division.

I believe the trial court correctly determined that Rule 88 was inapplicable to a

---

1. All references to statutes are to RSMo 2000, unless otherwise specified.

2. All rule references are to Supreme Court Rules (2004), unless otherwise stated.

3. The State of Missouri now refers to the Division of Family Services (DFS) as the Family Support Division (FSD).

third-party custody arrangement. All of the comments and presumptions for use of the Form No. 14 support that reasoning. For instance, the worksheet refers to "the parent obligated to pay support" and "the parent entitled to receive support." If the Form No. 14 were to be used with the State as the "parent entitled to receive support," there would still have to be some dollar amount used for the "parent entitled to receive support." The directions for use become nonsensical when the State's income is used in the Form No. 14. Among the assumptions used to calculate the child support, guidelines are based on "the income shares model, which seeks to apportion to the child the amount that the parents would have spent if the household were intact." Again, what income would be apportioned to the child had the grandmother's home remained intact? Throughout the assumptions, the term "parent entitled to receive support" is used. There is no assumption for a child in third-party custody. In fact, an obvious dilemma will be presented when a child is placed with a relative. If the guidelines apply to third-party custody, are both parents and the custodian's income to be used in the Form No. 14? There is no provision for such in the Form No. 14.

I believe public policy supports a decision that Rule 88 is inapplicable in third-party custody cases such as this. By this ruling, we place grandmother in a horrible quandary when faced with providing necessary care for a child with extraordinary medical needs. If she had kept the child in her home, she would have the benefit of the child's social security payments plus the total amount of her own income to provide a home for the child, but the child's health needs would still not be met. On the other hand, because she could not provide the necessary health benefits for the child without assistance from the State, she voluntarily placed the child in a

situation to benefit from better health care and is now being forced to keep health insurance on the child (with no indication that the health insurance is necessary or used by the State) and lose approximately one-fourth of her disposable income, severely limiting her capacity to provide for herself or future care for the child. I do not think the legislature contemplated a situation such as this when enacting chapters 452 and 454. I would find the use of Rule 88.01(b) and the Form No. 14 to be inapplicable in a third-party custody situation and would affirm the trial court's decision.