**In re The Honorable Timothy J. FINNEGAN, Petitioner.**

**No. SC 90937.**

Supreme Court of Missouri,
En Banc.

Dec. 21, 2010.

James M. Smith, Commission's Offices, St. Louis; Finnegan, St. Louis City Circuit Court, joins on the brief, for Commission.

State Solicitor James R. Layton, Attorney General's Office, Jefferson City, for Attorney General, who filed a brief as a friend of the Court; Jake McMahon, Jefferson City, for Missouri State Employees' Retirement System joining on the brief.

PATRICIA BRECKENRIDGE, Judge.

### Introduction

Timothy J. Finnegan, family court commissioner for the Circuit Court of St. Louis City, requested that the Commission on Retirement, Removal and Discipline (the commission) recommend to this Court that he be retired due to disability. After consideration of his request, the commission issued its findings of fact, conclusions of law, and recommendation that this Court retire Commissioner Finnegan for disability and award him retirement benefits as provided by law. Because the commission lacks authority over a family court

commissioner, its recommendation that Commissioner Finnegan be approved for disability retirement is rejected.

### Factual and Procedural Background

In April 2010, Commissioner Finnegan filed a request with the commission, pursuant to Rule 12.05, that he be retired for disability because of permanent sickness or physical or mental infirmity. In response to his request, the commission issued findings of fact and conclusions of law that Commissioner Finnegan was unable to discharge the duties of his office with efficiency due to permanent physical and mental disability. In its findings, the commission concluded that it has authority over a family court commissioner under article V, section 24 of the Missouri Constitution and section 487.020.3.[1]

The commission recommends that this Court accept its recommendation to retire Commissioner Finnegan based on permanent disability and award him retirement benefits as provided by law. This Court has final authority, on the commission's recommendation, to retire any judge or member of a judicial commission who is unable to discharge his or her duties because of permanent physical or mental disability. Mo. Const. art. V, sec. 24.2.

### The Commission Has No Authority Over Retirement of Family Court Commissioners

Before considering the merits of his request for retirement, it is necessary to determine whether Commissioner Finnegan, a court-appointed family court commissioner,[2] is subject to the authority of the commission. Article V, section 24 of the Missouri Constitution defines the scope of the commission's authority as extending to three categories of individuals: judges, members of judicial commissions, and members of the commission. The constitutional provision states, in pertinent part, that "[t]he commission shall receive and investigate all requests and suggestions for retirement for disability, and all complaints concerning misconduct of all *judges, members of the judicial commissions, and of this commission.*" Mo. Const. art. V, sec. 24.1 (emphasis added).[3]

---

1. Unless otherwise noted, all statutory references are to RSMo 2000.

2. Article V, section 15.4 of the Constitution authorizes "[p]ersonnel to aid in the business of the circuit court" to be selected as provided by law. By statute, the legislature has created various commissionerships to aid in the business of the circuit courts. *See, e.g.,* section 487.020 (creating family court commissioners); section 478.265 (creating probate court commissioners); section 478.003 (creating drug court commissioners); section 211.023 (creating juvenile court commissioners).

3. In fact, the full text of the Constitution emphasizes, by repetition, the limit on the scope of the commission's authority as extending to only judges, members of judicial commissions, and members of the commission:

> 1. ... The commission shall receive and investigate all requests and suggestions for retirement for disability, and all complaints concerning misconduct of all *judges, members of the judicial commissions, and of this commission* ....
>
> 2. Upon recommendation by an affirmative vote of at least four members of the commission, the supreme court en banc shall retire from office *any judge or any member of any judicial commission or any member of this commission* who is found to be unable to discharge the duties of his office with efficiency because of permanent sickness or physical or mental infirmity. *A judge, except a municipal judge* so retired shall receive one-half of his regular compensation during the remainder of his term of office. Where a *judge* subject to retirement under other provisions of law, has been retired under the provisions of this section, the time during which he was retired for disability under this section shall count as time served for purposes of retirement under other provisions of this constitution or of law.

As Commissioner Finnegan clearly is not a member of the commission, this Court must determine only whether his position as family court commissioner makes him a judge or member of a judicial commission.

Commissioner Finnegan is not a judge. This Court first decided the issue of whether a family court commissioner is a judge in *Slay v. Slay*, 965 S.W.2d 845, 845 (Mo. banc 1998). In that case, the Court held that a document purporting to be a "judgment" signed by a family court commissioner was not a true judgment because the document was not signed by a judge. *Id.* In so holding, the Court found that the term "judge" only refers to those judicial officers who are selected in accordance with and authorized to exercise judicial power pursuant to article V of the Missouri Constitution. The Court noted that article V vests judicial power in only this Court, the court of appeals, and the circuit courts. *Id.* The Court has followed its holding in *Slay* in subsequent cases. *See, e.g., Fowler v. Fowler*, 984 S.W.2d 508, 511–12 (Mo. banc 1999); *State ex rel. York v. Daugherty*, 969 S.W.2d 223, 224–25 (Mo. banc 1998).

In accordance with *Slay* and its progeny, the Court finds that Commissioner Finnegan is not a "judge" within the meaning of article V, section 24 of the Missouri Constitution because he was not selected in accordance with or authorized to exercise judicial power pursuant to article V of the Constitution. As such, the commission lacks authority over Commissioner Finnegan's request for disability retirement on the basis that he is a judge. The commission's arguments to the contrary are without merit.

■ Having found that Commissioner Finnegan is not a judge, it is necessary to determine if he is a member of a judicial commission as that term is used in article V, section 24 of the Constitution.[4] When interpreting a constitutional provision, the Court must consider the words used in their plain and ordinary meaning. *StopAquila.org v. City of Peculiar*, 208 S.W.3d 895, 902 (Mo. banc 2006). If a word used is not defined, the Court determines the plain and ordinary meaning of the word as found in the dictionary. *Id.* The dictionary defines "commission" as a "group of persons directed to perform some duty or execute some trust." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 457 (Philip Babcock Gove, et al., eds., Unabridged 1993). "Commission" also is defined as a "body of persons acting under lawful au-

---

3. Upon recommendation by an affirmative vote of at least four members of the commission, the supreme court en banc, upon concurring with such recommendation, shall remove, suspend, discipline or reprimand *any judge of any court or any member of any judicial commission or of this commission*, for the commission of a crime, or for misconduct, habitual drunkenness, willful neglect of duty, corruption in office, incompetency or any offense involving moral turpitude, or oppression in office....

       \*    \*    \*

8. Additional duties shall not be imposed by law or supreme court rule upon the commission on retirement, removal and discipline.

Mo. Const. art. V, sec. 24 (emphasis added).

4. The actual language of article V, section 24.1 of the Constitution gives the commission authority over "members of *the* judicial commissions." (Emphasis added.) The word "the" indicates that article V, section 24.1 references specific judicial commissions created under the Constitution. The nonpartisan judicial commissions established by article V, section 25(d) to nominate candidates to fill judicial vacancies clearly falls within the definition of "judicial commissions." The Court need not determine whether any other "judicial commission" is included in such definition because family court commissioners are not members of any commission.

thority to perform certain public services." BLACK'S LAW DICTIONARY 306 (Bryan A. Garner, 9th ed.2009).

From the definitions above and the legislature's use of the phrase "member of the judicial commission," it is clear that the term "commission" refers to a group or body that performs some delegated public function. Family court commissioners do not conduct their tasks as a group or body. Consequently, family court commissioners are not members of a "commission" based on the plain and ordinary meaning of that word. The mere fact that a family court commissioner is given the title "commissioner" is of no consequence because the language of article V, section 24 gives the commission authority over members of a judicial commission, not a commissioner. The language in article V, section 24 is unambiguous, and this Court lacks authority to read words into the provision that are not there. *Independence–Nat. Educ. Ass'n v. Independence School Dist.*, 223 S.W.3d 131, 137 (Mo. banc 2007). Because Commissioner Finnegan is not a member of a judicial commission, the commission does not have authority to consider his request for disability retirement on that basis.

Because Commissioner Finnegan is neither a judge nor a member of a judicial commission, his request for disability retirement falls outside the scope of the commission's authority. However, that does not mean he is ineligible for retirement or disability benefits. Under section 487.020.3, a commissioner is entitled to the same retirement benefits as an associate circuit judge. Moreover, section 104.518.1 authorizes the Missouri State Employees' Retirement System (MOSERS) to provide disability benefits to employees covered by section 476.515.1(4). That section covers

"any person who has served ... as commissioner or deputy commissioner of the circuit court...." Section 476.515.1(4). Therefore, Commissioner Finnegan can apply to MOSERS for long-term disability benefits.

### Conclusion

Because Commissioner Finnegan is neither a judge nor a member of a judicial commission, the commission lacks authority to recommend his disability retirement. Therefore, the commission's recommendation that Commissioner Finnegan be retired due to disability is rejected.

PRICE, C.J., TEITELMAN, RUSSELL, FISCHER and STITH, JJ., concur; WOLFF, J., concurs in separate opinion filed.

MICHAEL A. WOLFF, Judge, concurring.

### Introduction

I concur in the principal opinion. I write separately to point out that there is no constitutional authority for the current officers called "commissioners." The assignment of judicial powers in the Missouri Constitution solely to judges is unambiguous and mandatory. The Court has a duty to respect the constitutional assignment of judicial powers, and, as gently as possible, to phase out these positions as these officers end their service and to seek their replacement with judges as needed.

Commissioner Finnegan is one of 37[1] persons whose commissioner positions have been created by legislation since 1976—when the voters adopted the modern judicial framework in article V of the Missouri Constitution. These commissioners perform important functions for the

---

1. There are 34 full-time commissioners and three deputy commissioners. Practically, there is no real difference in the job duties between the two.

people of the state. Some conduct "family court" proceedings, some handle probate matters and others conduct "drug court" or similar dockets. Commissioners preside over some innovative and important judicial proceedings. They all appear to be highly qualified and capable of doing the work the legislation assigns to them. They function, in nearly all respects, as judges.

But they are not judges.

Article V is clear. It defines who is in the judiciary, and it establishes clear rules for the judiciary. Mo. Const. art. V, secs. 14–23 (amended in 1976). There is nothing wrong with calling someone a "commissioner." Nor is there anything wrong with assigning special duties to those called "commissioners." But, under the Missouri Constitution, to exercise judicial functions, they first must be judges selected in accordance with our constitution.

### No Elections, No Nonpartisan Plan Appointments

Commissioners are not elected by the voters of their counties or circuits, as provided in article V, section 26(b), nor are they selected in accordance with article V, section 25 for those counties included in the nonpartisan court plan.

The Missouri Constitution does not vest any judicial power in commissioners; therefore, commissioners are not judges. Article V, section 1 of the Missouri Constitution creates and defines courts. This article vests the judicial power of the state in: "a Supreme Court, a court of appeals consisting of districts as prescribed by law, and circuit courts." Mo. Const. art. V, sec. 1. Nothing in the language of the Missouri Constitution includes commissioners among those authorized to exercise judicial power. *See* Mo. Const. art. V. To consider commissioners as members of the judiciary would be contrary to the voters' intent in approving article V.

The 1976 amendments drastically changed Missouri's judiciary to create a unified court system to modernize the judicial branch and equalize the load of judicial business throughout the state instead of limiting it to a smaller geographic area.[2] First, the 1976 amendments to the Missouri Constitution refined the nonpartisan court plan. Mo. Const. art V, sec. 25. Second, language was inserted clarifying that the two constitutional methods of selecting members of the judiciary are: the nonpartisan court plan[3] and judicial election.[4] Third, the amendments phased out all commissioners in the Supreme Court

2. It is important to note that commissioners are authorized by statute for a particular county. This means that commissioners are unable to respond to demand increases in counties other than where they are authorized. This inflexibility counters the purpose of the article V amendments—namely, to create a unified court system responsive to geographic needs with judges who can be assigned wherever they are needed.

3. "Whenever a vacancy shall occur in the office of judge of any of the following courts of this state, to wit: The supreme court, the court of appeals, or in the office of circuit or associate circuit judge within the city of St. Louis and Jackson County, the governor shall

fill such vacancy by appointing one of three person possessing the qualifications for such office...." Mo. Const. art. V, sec. 25(a).

4. "At any general election the qualified voters of any judicial circuit outside of the city of St. Louis and Jackson County, may by a majority of those voting on the question elect to have the circuit and associate circuit judges appointed by the governor in the manner provided for by the appointment of judges to the courts designated in section 25(a), or, outside the city of St. Louis and Jackson County, to discontinue any such plan...." Mo. Const. art. V, sec. 25(b).

and appellate court[5] as vacancies occurred. Mo. Const. art. V, sec. 27.11. Fourth, the amendments transferred jurisdiction of magistrate courts, probate courts, courts of criminal correction, courts of common pleas and municipal courts to the circuit court in their geographic area and authorized the transfer of judicial personnel from one circuit to another. Mo. Const. art. V, secs. 23, 27.

The effect of these changes was to define the scope of the judiciary's authority and to ensure that all members of the judiciary either were elected or were retained pursuant to the nonpartisan court plan.[6] The only exception is municipal judges, appointed and paid by their municipal governments—but their courts are divisions of the circuit courts. In the absence of a municipal division, matters usually handled in municipal divisions are assigned to associate circuit judges. Mo. Const. art. V, sec. 23.

By phasing out the positions of Supreme Court and appellate commissioner as well as by subsuming numerous positions into the circuit courts, article V clearly defined what courts and positions could exercise judicial functions. Mo. Const. art. V, secs. 27.11, 27.2, 27.3, 27.4, 27.9. By specifically affirming that all judges either are elected or retained, the voters approving article V ensured that judicial functions would be performed only by those who had been selected as judges under the constitution and approved by the voters, either in partisan elections or in retention elections under the nonpartisan court plan. Mo. Const. art. V, secs. 27.8, 27.9 (stating that all circuit judges can either be elected or retained under the nonpartisan court plan); Mo. Const. art. V, secs. 25(c)(2), 25(d).

Little by little, beginning in 1979,[7] the Missouri legislature allowed judges in many circuits to appoint commissioners in probate, family, traffic and drug "courts." Pursuant to these statutes, Missouri currently has 37 commissioners: nine drug commissioners, 19 family commissioners, seven probate commissioners and two traffic commissioners, according to the state courts administrator's office. With the exception of traffic commissioners, each of these commissioners is paid at least the salary of an associate circuit court judge (some are paid the same as a circuit court judge) from the same source of funds as article V judges.[8] A table setting forth the statutes authorizing appointment of commissioners is included in the appendix to this opinion.

---

5. The commissioners serving in the appellate courts at the time of the 1976 article were analogous to the commissioners whose status is at issue today. The appellate commissioners heard arguments and drafted opinions. The opinions issued by the court were approved by the judges of the court, just as today's commissioners hear cases and present proposed judgments to judges to be signed.

6. I use the word "retained" to refer to those judges appointed under Mo. Const. art. V, sec. 25 who are subject to periodic retention elections.

7. In 1976, article V of the Missouri Constitution was amended to subsume specialty courts—such as probate, common pleas and family courts—into the circuit courts. Mo. Const. art. V, secs. 27.11, 27.2, 27.3, 27.4, 27.9. Two years after the amendment of the Missouri Constitution, the Missouri legislature authorized the appointment of specialty probate commissioners, section 478.265, seemingly in direct contravention of the voters' action in enacting the new article V.

8. For some "family courts," the commissioners are paid from a "Family Services and Justice Fund" fed from various "family court" fees. Section 488.2300. I simply note this fact; it is beyond the scope of this opinion to include a full discussion of how inappropriate it seems to fund public judicial positions with money extracted from litigants.

For nearly two decades, commissioners, as authorized by statute, executed nearly the same functions as judges. But in the late 1990s, two of this Court's cases reaffirmed that commissioners are not article V judges and, therefore, may not sign "judgments." *See Fowler v. Fowler*, 984 S.W.2d 508 (Mo. banc 1999); *Slay v. Slay*, 965 S.W.2d 845 (Mo. banc 1998) (holding that commissioners are "not person[s] selected for office in accordance with and authorized to exercise judicial power by article V of the state constitution").

Now, these commissioners exercise all other judicial functions except authorizing a final judgment. Section 478.003 [9] ("The commissioner shall have all the powers and duties of a circuit judge, except that any order, judgment, or decree of the commissioner shall be confirmed or rejected by an associate circuit or circuit judge ...."); section 478.265 ("The commissioner will have all the powers and duties of such judge; but the judge shall by order of record reject or confirm all orders, judgments and decrees."); section 479.500 ("These traffic judges also may be authorized to act as commissioners to hear in the first instance petitions ...."); section 487.020 (appointing commissioners to hear family cases and to make findings when adopted and confirmed by the order of a circuit or an associate circuit judge); section 487.030 (stating that the findings and recommendations of the commissioner shall become the judgment of the court only when confirmed by a judge).

The cases define the exclusive realm of the judiciary as "judicial review and the power of courts to decide issues and pronounce and enforce judgments." *See, e.g.,* *Dabin v. Director of Revenue*, 9 S.W.3d 610, 614 (Mo. banc 2000); *Chastain v. Chastain*, 932 S.W.2d 396, 399 (Mo. banc 1996); *Percy Kent Bag Co. v. Mo. Comm'n*

*on Human Rights,* 632 S.W.2d 480, 484 (Mo. banc 1982). "The entry of a judgment remains 'the quintessential function of a court.'" *Hilburn v. Staeden,* 91 S.W.3d 607, 610 (Mo. banc 2002) (quoting *Carr v. North Kansas City Beverage Co.,* 49 S.W.3d 205, 207 (Mo.App.2001)); *see also Div. of Classification and Treatment v. Wheat,* 829 S.W.2d 581, 583 (Mo.App. 1992).

Though the entry of a judgment is the "quintessential function" of a judge, it is not the only function. Commissioners hear evidence and make rulings about legal issues that may arise in hearings and otherwise—in short, they are exercising nearly co-extensive authority with members of the judiciary, except for the entry of final judgments. *See, e.g., Slay,* 965 S.W.2d at 846 (finding that commissioners sit in the place of the judge and issue "recommendations and findings."). A practical look at commissioners' authority illustrates that they are exercising most of the powers and functions given to the judiciary by the Missouri Constitution. For the commissioners' use of judicial power to be permissible, however, the constitution must vest judicial power in them as part of the judiciary or otherwise.

In vetoing a bill creating commissioners 12 years ago, then-Governor Mel Carnahan pointed out the constitutional flaw:

> This state has seen a proliferation of the creation of "commissioners." They have been created to relieve the circuit courts of the heavy caseload in specific areas of the state. This bill now makes it clear that these commissioners have the power of a judge, as well as the pay and other compensation of a judge. However, they are not selected like judges. Pursuant to Article V of the Missouri Constitution, judges are either elected

---

9. All references to the Missouri statutes are to RSMo 2000 unless otherwise stated.

by the people or nominated and appointed pursuant to the non-partisan court plan known around the country as the "Missouri plan." Our state has been complimented and imitated in the way it selects our judges. Under this bill, however, commissioners are appointed by the presiding judge after a majority vote of the court en banc. . . .

S. 89, 2nd Sess., at 2 (Mo.1998).

In the following legislative session, Chief Justice Duane Benton, in his state of the judiciary address to the General Assembly, reiterated Carnahan's point:

The 1979 constitutional amendment simply does not anticipate commissioners acting as judges. Serious questions have been presented to the Supreme Court regarding the authority of circuit court commissioners to sign final court judgments, to issue warrants and to take other judicial action, ... I am pleased to stand with the Governor and call for the conversion of circuit court commissioners to judges.

Duane Benton, *State of the Judiciary Address,* 55 J. MO. B. 1, 10 (1999).[10] While a governor may veto a bill on occasion—such as the governor's veto of the 1998 bill—the creation of commissioners can be included in judiciary bills passed by the legislature that may have more provisions a governor favors than provisions he may find objectionable. So a governor's veto really does not put an end to the creation of commissioners, which, as with many matters that come before the legislature, are the results of the expressions of local interests—also known as politics.

## Fixing the Problem, Gently

Although the governor and the chief justice in 1998 and 1999 called on the legislature to fix the problem by converting commissioners to judges, those calls did not prompt legislative action. Competing interests may well play a part in the failure to act.

But the courts' interest is different. This Court's interest should be in protecting the constitution. And, I believe, it is our constitutional duty to do so.

In recent years, the Missouri courts have developed a "weighted workload study" as a tool for ascertaining whether the judicial needs of citizens in the various circuits in the state are being met. The study, which is updated periodically, is useful for determining what circuits need additional help and which have help to share.

There is a way for this Court to take the lead in resolving the constitutional problem posed by the creation of commissioner positions and to use the weighted workload study to help with the transition.

First, we should recognize the dedicated service that these individual commissioners perform and frankly acknowledge that the commissioners themselves did not create this constitutional problem by accepting their appointments in good faith. So those in office should remain in office until they leave by retirement, resignation or death.

Second, in the absence of legislation within a reasonable time converting commissioner positions to judgeships, when a commissioner position becomes vacant, this Court should use its constitutional "superintending" and "supervisory" authority un-

10. Judge Benton referred to these amendments as the 1979 amendments. January 1, 1979 is the date that the amendments were effective. Mo. Const. art. V. The 1979 amendments referenced by Judge Benton, therefore, are same amendments as those referenced as the 1976 amendments through out this opinion. 1976 was the year that the voters passed the amendments to article V.

der article V, section 4.1 and order the appointing authorities within the court system not to fill the position. If the weighted workload study supports the addition of a judge to fill the role, this Court should ask the General Assembly to meet this need by creating an article V judge position. If the weighted workload study does not support the need for an additional judge, the position should remain unfilled until the General Assembly decides to create a judge position with or without reference to the weighted workload study. In either event, the specialized dockets may continue, but with judges presiding—who are authorized by the constitution to do so. This solution is the same mechanism that the 1976 article V amendments used to phase out Supreme Court and appellate court commissioners—allowing commissioners to retain their positions until retirement, and when a commissioner retired, not filling the vacancy.

The creation of the new group of "commissioners" since 1979 may have seemed appropriate (even if not authorized constitutionally) to meet certain local needs in the 20th century when the state's financial resources were flush, relatively speaking, and we could afford to have judicial officers permitted to perform only one specialized set of tasks in a particular county. But finances in the early 21st century are tight, and a modern judiciary—as contemplated in the revision of article V some 34 years ago—must be able to adapt to society's changing needs and demands for judicial services. For example, a drug court commissioner, whose time is not fully occupied by that docket, cannot volunteer for or be assigned to other dockets that may be crowded and in need of relief. By contrast, neither circuit judges nor associate circuit judges are so constrained and, as such, their assignments can be—and routinely are—changed to meet the changing needs of their counties and circuits.[11]

### Conclusion

When the people approved article V in 1976, they adopted a constitutional framework for an integrated, modern judiciary empowered to manage its resources and workload statewide. The least that we can do is to do our duty—that is, to respect the boundaries that the constitutional framework establishes, even though it may be convenient or comfortable to do otherwise. Purely and simply, that means no more commissioners.

That said, I concur in the principal opinion.

### APPENDIX

| Comm'r Type | Authorizing Statute[12] | Effective Date | Current No. of Comm'rs | No. of Comm'rs Authorized |
|---|---|---|---|---|
| **Family** | § 487.020 | 1993 | 19 | 3/circuit [13] |

11. The legislature apparently recognized the problem that the inflexibility of commissioner positions has created; last session, it enacted section 478.001.2, which authorizes the transfer of a drug court commissioner to counties other than the one in which the commissioner resides and authorized drug court commissioners to serve in DWI and other treatment or "problem solving" courts. House Bill Nos. 1742 and 1674, Session Laws of 2010, p. 429.

12. The statutes listed in this table are statutes that authorize the appointment of commissioners. These statutes do not encompass all legislation addressing commissioners.

13. Juvenile commissioners, who were converted to family court commissioners when the statute was enacted, are not included in the total number of commissioners authorized. Section 487.020.

| | | (amended in 1995, 1999) | | |
|---|---|---|---|---|
| Probate | § 478.265 § 478.266 | 1979 | 4 Comm'r | 7 |
| | § 478.267 | 1979 | 3 Deputy Comm'r [14] | |
| | § 478.268 | 1996 (amended in 1997) | | |
| Traffic | § 479.500 | 1992 (amended in 1996) | 2 | 2 |
| Drug | § 478.001 § 478.003 | 1998 (amended in 1999, 2010) | 9 | Unlimited |

---

14. *See* Section 478.266 ("... Subject to the approval or rejection by the judge of the probate court, the deputy commissioner shall have all the powers and duties of the clerk of the probate division and such judge."), *com-* *pare* section 478.265 ("Subject to approval or rejection by the judge of the probate division, the commissioner shall have all the powers and duties of such judge....").