**Holly L. KROKSTROM, et al.,
Petitioners/Appellants,**

v.

**Joseph S. VanDOLAH, Respondent.**

**No. WD 44824.**

Missouri Court of Appeals,
Western District.

March 17, 1992.

Sarah E. Healy, Kansas City, for petitioners-appellants.

Robert E. Wonder, Kansas City, for respondent.

Before TURNAGE, P.J., and KENNEDY and BERREY, JJ.

TURNAGE, Presiding Judge.

Holly Krokstrom, on her own behalf, and as next friend of her son, Wesley VanDolah, brought an action for declaration of paternity and for an order of support against Joseph VanDolah. The court entered judgment on a jury verdict in favor of VanDolah and Holly appeals. Complaint is made of the admission of evidence from a man who said he left a bar with Holly in the early morning hours about the time Wesley was conceived. Reversed and remanded.

Both Holly and VanDolah testified that they met on December 31, 1985, at a party and had sexual relations that night. Holly testified that their relationship lasted until August, 1986, and that they had sexual relations frequently. VanDolah said that they again had relations two days after they first met but not thereafter.

Wesley was born on October 10, 1986, about 281 to 283 days after Holly and VanDolah had relations.

Holly, Wesley, and VanDolah had blood tests performed. The result of these tests indicated a 98.9% probability that VanDolah was the father of Wesley. Subsequent to the blood test being performed, VanDolah alleged that one Osborne had sexual access to Holly during the probable period of conception. Osborne was named as a party to the action and blood tests were performed on him. The tests unequivocally excluded Osborne as the father of Wesley.

After Osborne had been excluded as the father, DNA tests were performed and this resulted in a finding of a 99.9% probability that VanDolah was the father of Wesley.

During the trial, VanDolah offered, outside the hearing of the jury, to prove that Osborne had sexual relations with Holly on January 7 or 8, 1986. Osborne testified outside the hearing of the jury that he had

taken a blood test which proved that he could not be the father of Wesley. The trial court thereupon ruled that evidence of sexual relations between Osborne and Holly would be excluded. Nevertheless, the court allowed Osborne to testify that he met Holly in a bar on January 7 or 8, 1986, and that the two of them danced together and talked until late in the evening. After Osborne had testified to meeting Holly and talking with her at the bar, he was asked by VanDolah's counsel if he had occasion to date Holly later the following evening. On objection to the use of the term of dating, the court excluded evidence of dating, but allowed Osborne to testify that he and Holly left the bar together at 1:30 in the morning.

During the jury deliberations, the jury sent a question which inquired "can it be assumed that the witness with red hair [i.e. Osborne] had sex with Holly?". The court responded that it could not answer the question and referred the jury to the instructions and its collective recollection of the evidence. The jury returned a verdict in favor of VanDolah.

■ Holly contends that the court erred in allowing Osborne to testify that he met Holly in the bar and left with her at 1:30 a.m. This contention is based on a provision of § 210.834.4, RSMo Supp.1987, which provides that when the court finds that the results of the blood tests show that a person presumed or alleged to be the father of a child is not the father of such child, such evidence shall be conclusive of nonpaternity and the court shall dismiss the action as to that party. Holly contends that Osborne was alleged to have had sexual relations with her about the time of the conception of Wesley but that Osborne underwent blood tests which showed that he could not be the father. She contends that under § 210.834.4 this finding of nonpaternity was conclusive. She further contends that to allow Osborne to testify about

meeting Holly at a bar and leaving with her at 1:30 in the morning allowed the jury to infer that Holly had sexual relations with Osborne and that he could be the father.

VanDolah contends that the credibility of Holly was for the jury and that evidence that she met Osborne in the bar and left with him early in the morning impeached her testimony that she was "going with" VanDolah from January to August, 1986. The court stated that it admitted Osborne's testimony on the theory urged by VanDolah.

Although Holly as a witness was subject to impeachment or contradiction, the trouble with VanDolah's theory for admission of the Osborne testimony is that it did not impeach Holly's testimony that she was going with VanDolah from January through August, 1986. Holly did not testify that she was going exclusively with VanDolah during that period nor did she testify that she did not go out with anyone else during that time. Thus, the testimony of Osborne was inadmissible to impeach Holly's prior testimony.[1] *State v. Jackson*, 412 S.W.2d 428, 435[10] (Mo.1967).

■ The admission of Osborne's testimony was prejudicial to Holly because it invited the jury to infer that Osborne had sexual relations with Holly at about the time of conception even though blood tests had conclusively shown that Osborne was not the father. That the jury accepted this invitation is shown by the question which it sent during deliberations. Without being informed of the blood tests which showed Osborne could not be the father, it is not surprising that the jury may have inferred that Osborne and Holly had relations and that Osborne could be the father.

The testimony of Osborne was not proper impeachment or contradiction because it was not contrary to Holly's testimony. Such evidence was prejudicial because it

---

1. The parties refer to the evidence as impeachment. However, it was more in the nature of contradiction. Impeachment is directed to the credibility of a witness for the purpose of discrediting him and generally does not provide factual evidence, whereas contradiction is directed to the accuracy of a witness's testimony and supplies factual evidence. *D.K.L. by K.L. v. H.P.M.*, 763 S.W.2d 212, 219[3, 4] (Mo.App. 1988). Here the testimony of Osborne provided factual evidence of his being with Holly.

injected a false issue of the possibility that Osborne had sex with Holly at about the time of conception, even though the nonpaternity of Osborne was conclusively shown.

The judgment is reversed and this cause is remanded for further proceedings.

All concur.