Krista Leanne AMBURN, Respondent,

v.

Jacob Dewayne ALDRIDGE, Appellant.

No. WD 70159.

Missouri Court of Appeals, Western District.

Oct. 27, 2009.

Charles A. Harter, Esq., Fenton, MO, for appellant.

Conne J. Clark, Esq., Osage Beach, MO, for respondent.

Before: ALOK AHUJA, P.J., and JAMES M. SMART and LISA WHITE HARDWICK, JJ.

ALOK AHUJA, Judge.

Appellant Jacob Aldridge appeals the Miller County Circuit Court's judgment awarding Respondent Krista Amburn appellate attorney's fees based on a motion she filed after the issuance of the mandate in an earlier paternity determination appeal. Aldridge argues that the circuit court lacked authority to award attorney's fees following the conclusion of appellate proceedings on the underlying paternity issues. We agree, and reverse the attor-

ney's fee award, as well as the trial court's additional award to Amburn of attorney's fees *pendente lite* for the present appeal.

**Factual and Procedural Background**

On May 12, 2005, Amburn filed a paternity petition against Aldridge pursuant to the Uniform Parentage Act, §§ 210.817–.852 (the "UPA").[1] The court's Judgment and Decree declared Aldridge's paternity, ordered the payment of child support, and adopted a parenting plan. Amburn did not seek attorney's fees at any point during the trial-court litigation of the underlying paternity action: in her pleadings, at trial, or following the entry of judgment. Not surprisingly, therefore, the Judgment did not address or award attorney's fees.

Aldridge appealed to this Court. Amburn did not assert a right to attorney's fees at any time during the appeal. This Court affirmed the circuit court's judgment without discussing or awarding attorney's fees. *K.L.A. v. Aldridge*, 241 S.W.3d 458 (Mo.App. W.D.2007). This Court's mandate, issued on January 18, 2008, specified only that Amburn should recover from Aldridge her "costs and charges herein expended."

On February 20, 2008, more than thirty days after the issuance of the mandate, Amburn filed her initial motion in the circuit court seeking an award of attorney's fees associated with the prior appeal, claiming that those fees were "costs" within the meaning of our mandate. Aldridge entered a special appearance "solely to contest jurisdiction," and moved to dismiss

and strike Amburn's fee request. After initially denying Amburn's motion for insufficient service, the circuit court entered a judgment for appellate attorney's fees against Aldridge on September 11, 2008. Aldridge appealed.

Amburn subsequently filed a motion for attorney's fees and costs *pendente lite* for the present appeal, which the circuit court also granted. Aldridge timely appealed this order as well.

**Analysis**

"Although awards of attorney's fees are left to the broad discretion of the trial court and will not be overturned except for an abuse of discretion, this standard is based on the assumption that the court had the authority to award the fees." *Washington Univ. v. Royal Crown Bottling Co.*, 801 S.W.2d 458, 469 (Mo.App. E.D.1990). The scope of the trial court's authority to award attorney's fees following the conclusion of the underlying paternity action is a legal issue which we review *de novo*. *Warlop v. Warlop*, 254 S.W.3d 262, 263 (Mo.App. W.D.2008).[2]

**I.**

"Generally, a decision of the appellate court is considered final at the time the mandate is issued." *Meierer v. Meierer*, 876 S.W.2d 36, 37 (Mo.App. W.D.1994). In conducting any further proceedings following a final appellate disposition, the trial court may not modify or depart from

1. Unless otherwise noted, all statutory references are to RSMo 2000.

2. Aldridge argued below, and in this court, that the trial court lacked "jurisdiction" to entertain Amburn's attorney's fee motion, based on his claim that the motion was untimely. In light of *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253–54 (Mo.

banc 2009), we question whether Aldridge's arguments in fact attack the trial court's "jurisdiction," as that term is now understood in Missouri courts. Whatever the appropriate nomenclature, however, Aldridge plainly preserved his legal objections to the fee awards in the trial court, and is entitled to review of the awards here.

the mandate. *In re Marriage of Bullard,* 18 S.W.3d 134, 138 (Mo.App. E.D.2000).

■ An allowance of "costs" in an appellate court's mandate generally does not include attorney's fees. *Papin v. Papin,* 475 S.W.2d 73, 77 (Mo.1972); *Wakili v. Wakili,* 918 S.W.2d 332, 338 (Mo.App. W.D.1996). *Papin* rejects a post-appellate-mandate fee request similar to Amburn's. *Papin* concerned the proper distribution of funds held in trust among interested parties. In its judgment, the *Papin* trial court retained jurisdiction to award attorney's fees to *plaintiffs'* counsel, to be paid from the corpus of the trust at issue. 475 S.W.2d at 75.[3] Defendants unsuccessfully appealed the merits of the distribution of funds ordered in the trial court's judgment. The appellate court's mandate specified that the trial court's judgment was "in all things affirmed," and provided for plaintiffs to recover from defendants their "costs and charges herein expended." *Id.* After receiving this mandate, the trial court allowed *defendants* (who had not previously prayed or moved for an award of fees) to amend their answer to seek attorney's fees, and then granted defendants' request after a hearing. *Id.* On appeal of the attorney's fee decision, plaintiffs contended the trial court had no jurisdiction to alter the appellate mandate by construing it to award attorney's fees. *Id.* The Missouri Supreme Court agreed and reversed, finding that the trial court exceeded the scope of the mandate when it awarded attorney's fees to defendants. *Id.* at 75–76.

Here, the circuit court's award of appellate attorney's fees to Amburn, well after the issuance of this Court's mandate and in the absence of any earlier prayer or motion seeking such fees, disregards the general rule expressed in *Papin.* This Court's mandate awarding Amburn her "costs and charges herein expended" did not include attorney's fees. Under the rule discussed in *Papin,* the absence of an award of attorney's fees in our mandate deprived the trial court of authority to consider Amburn's subsequent request for such fees.

## II.

In dissolution cases Missouri courts have recognized limited exceptions to the general rule that a trial court lacks authority to award attorney's fees following issuance of the appellate court's mandate. The parties point to two such exceptions. Neither applies here, however.

■ The first exception allows a trial court to award attorney's fees after appeal on a motion—filed prior to the appellate court's mandate—which the trial court holds in abeyance pending disposition of the appeal. *Schumann v. Schumann,* 830 S.W.2d 562, 564 (Mo.App. E.D.1992).[4] In this case, however, the trial court did not reserve jurisdiction to decide a motion brought prior to the appellate court's mandate, because Amburn made no such motion. Amburn's case, therefore, is not aided by *Schumann's* holding that "having held a ruling in abeyance does not deprive the trial court of jurisdiction." *Id.*

---

3. Plaintiffs, but not defendants, had requested the allowance of attorney's fees in their pleadings.

4. It is preferable that trial courts rule on attorney's fee motions when they are presented (at least in part so that any challenge to the award of fees can be resolved in the "merits"

appeal). 830 S.W.2d at 564. Indeed, on at least one occasion an appellate court remanded as error a trial court's failure to rule on a pending attorneys fee request until an appeal was concluded. *Sheets v. Sheets,* 632 S.W.2d 80, 83 (Mo.App. E.D.1982).

The parties also discuss *Meierer v. Meierer*, 876 S.W.2d 36 (Mo.App. W.D.1994), which reflects an extension of the first exception. There the respondent moved for an award of attorney's fees for a dissolution appeal *after* issuance of the appellate court's *per curiam* order disposing of the appeal, but *before* the appellate mandate issued; the trial court actually entered its fee award *after* issuance of the mandate. *Id.* at 37. We affirmed the award entered in response to the respondent's post-decision, pre-mandate motion, noting that circuit courts retain statutory jurisdiction to grant attorney's fees up until issuance of the mandate of the appellate court, and that such jurisdiction continues even after the mandate where attorney's fees are requested prior to mandate, but the circuit court holds its ruling in abeyance. *Id.* Because Amburn did not ask for appellate attorney's fees prior to the issuance of our earlier mandate, however, *Meierer* cannot sustain the award in this case.

The second exception to the *Papin* rule identified by the parties allows circuit courts to hear untimely motions for attorney's fees where a party was prevented from making a timely request. In *Williams v. Williams*, 23 S.W.3d 721 (Mo. App. E.D.2000), the appellant filed for bankruptcy after the appellate court's decision, but prior to the mandate. The bankruptcy filing triggered an automatic stay of non-bankruptcy litigation against the debtor under 11 U.S.C. § 362, and prevented the respondent from asking for attorney's fees pre-mandate. After the respondent sought and obtained a bankruptcy court order lifting the automatic stay, 11 U.S.C. § 108 extended respondent's time to file a motion for appellate attorney's fees by thirty days. *Id.* at 724. Respondent filed her motion within the thirty-day extension provided by the federal statute, and the Eastern District affirmed the trial court's

award of attorney's fees in those circumstances. *Id.*

This second exception also cannot aid Amburn, however, because she points to no statute or other circumstance that prevented her from making an earlier request for her appellate attorney's fees.

This case lacks any special characteristic justifying Amburn's belated fee request. The dissolution cases applying existing exceptions generally rely on circumstances outside the movant's control to justify a late request or award. Even if these dissolution cases were otherwise relevant in this paternity action, Amburn can point to no such circumstances which prevented her from requesting, or obtaining a ruling on, her appellate attorney's fees before our mandated issued on January 18, 2008. Amburn's untimely request generated several motions, multiple hearings, and a second appeal, which consumed significant resources of both the litigants and the courts, and needlessly postponed the finality of the litigation. Amburn's unjustifiably delayed request had just the sort of consequences the current legal framework was designed to avoid. We see no compelling reason to upset this framework in response to Amburn's untimely motion.

### III.

Amburn places heavy reliance on *S.J.V. by Blank v. Voshage*, 860 S.W.2d 802 (Mo. App. E.D.1993), which also involved an award of appellate attorney's fees in a UPA action. In *S.J.V.*, mother—who brought the original paternity action—requested, and was awarded, attorney's fees for the trial-court proceedings prior to the entry of judgment. *Id.* at 803. When father appealed, mother requested an additional award for fees associated with the coming appeal. *Id.* Mother's motion was filed more than thirty days after the entry of the trial court's judgment, and therefore

that judgment was already final pursuant to Supreme Court Rule 75.01 when mother made her request for appeal-related fees. The circuit court denied mother's motion for lack of jurisdiction. *Id.* at 804. The Eastern District reversed, holding that §§ 210.842 and 210.845 of the UPA—as they then existed—granted the circuit court authority to hear and decide mother's motion, despite the finality of the underlying judgment. *Id.* at 804–05.

*S.J.V.* is distinguishable in at least two critical respects. First, *S.J.V.* relied on a provision of the UPA which has since been substantially revised. The version of § 210.845 governing *S.J.V.* provided broadly: "The court has continuing jurisdiction to modify a judgment or order entered under sections 210.817 to 210.852." § 210.845, RSMo Supp.1988. By contrast, the current version of § 210.845 provides more narrowly that "[t]he provisions of any decree *respecting support* may be modified only upon a showing of changed circumstances so substantial *and continuing* as to make the terms unreasonable." § 210.845, RSMo 2000 (emphasis added).

*S.J.V.* cited § 210.845 as extending the circuit court's jurisdiction to hear requests for attorney's fees. 860 S.W.2d at 804.

However, that statute has changed in two important ways since *S.J.V.* was decided, rendering it inapplicable to a post-mandate attorney's fee request: (1) the modification jurisdiction granted by the UPA is now limited to decree provisions "respecting support," and (2) the UPA now requires the party seeking modification to show changed circumstances so "substantial *and continuing* " as to render the provisions of the original decree unreasonable. *S.J.V.* does not govern the present case, since Amburn cannot meet either condition now specified in § 210.845.[5]

A second critical distinction between this case and *S.J.V.* is that here, Amburn only sought her fees *after the appellate mandate issued.* In *S.J.V.*, the mother sought to recover her appellate fees after the judgment had become final in the trial court, but before an appellate disposition issued (indeed, *S.J.V.* addressed the underlying merits and the attorney's fee issue in the same opinion). *S.J.V.* therefore had no reason to address the effect of the issuance of the appellate mandate in the merits appeal on the trial court's power to award attorney's fees. As explained above, under *Papin* the issuance of our mandate in the earlier appeal is decisive here.[6]

**5.** Notably, in the trial court Amburn did not argue that her attorney's fee motion sought a "modification" under § 210.845; instead, she claimed that she was entitled to belatedly seek her attorney's fees as "costs" to which she was entitled pursuant to this Court's mandate.

**6.** *S.J.V.*'s holding that the trial court could award appellate attorney's fees after finality of the judgment *in the trial court* is similar to the result reached in dissolution cases, where the courts have held that trial courts retain jurisdiction to grant attorney's fees until final disposition of the appeal. *Brucker v. Brucker*, 607 S.W.2d 444, 444–45 (Mo.App. E.D.1980). The courts recognize this continuing authority because to do otherwise would "effectively prevent any non-appealing party the benefit of collecting attorney's fees for appeal." *Id.* at 445. As *Brucker* explained:

The non-appealing party may not know that the appellant plans to appeal until the notice of appeal is filed. In a court-tried case, a motion for new trial is not required. Rule 73.01(1)(c). An appealing party can wait until judgment becomes final and then, within ten days, file a notice of appeal. Rule 81.04(a). In this situation, the non-appealing party would not realize until after the judgment had become final that attorney's fees for appeal would be necessary. *Id.* However, even under the rule recognized in dissolution cases allowing a trial court to award appellate fees after the underlying dissolution judgment has become final, this authority does not extend beyond the final disposition of the appeal, unless one of the exceptions discussed *supra* § II applies. *See, e.g., Davis v. Schmidt*, 210 S.W.3d 494, 516

## IV.

The trial court had no authority to award Amburn her attorney's fees for a prior, concluded appeal, when she first moved for that relief after the mandate issued in the earlier appeal. We accordingly reverse the circuit court's award of fees for the concluded appeal. For the same reasons, we also reverse the trial court's award of fees *pendente lite* for Amburn's defense of this appeal.

All concur.

n. 25 (Mo.App. W.D.2007); *Mason v. Mason,* 905 S.W.2d 519, 521 (Mo.App. E.D.1995); *Nelson v. Nelson,* 516 S.W.2d 574, 582 (Mo. App.1974).