IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
F.J.M., INDIVIDUALLY AND )
AS NEXT FRIEND FOR A.E.J.J., )
 )
 Respondents, )
 )
v. ) WD83840
 )
F.L.J., ) Opinion filed: May 11, 2021
 )
 Appellant. )

APPEAL FROM THE CIRCUIT COURT OF CARROLL COUNTY, MISSOURI
 THE HONORABLE LORI J. BASKINS, JUDGE

 Division Three: Thomas H. Newton, Presiding Judge,
 Gary D. Witt, Judge and W. Douglas Thomson, Judge

 F.L.J. ("Mother") appeals the judgment of the circuit court of Carroll County

declaring F.J.M. ("Father") to be the natural, biological father of A.E.J.J. ("Child"),

awarding Father sole legal custody of Child, awarding Father and Mother joint

physical custody, and ordering that neither party shall pay child support to the other.

On appeal, Mother claims that the trial court erred in: (1) refusing to dismiss Father's

"petition for determination and declaration of paternity, order of child custody, and

order of support" ("Father's Paternity Action") because it misapplied the law in that
under sections 210.845 and 452.370.6,1 the Pettis County circuit court, which

docketed a prior administrative order for child support, had continuing and exclusive

authority over a modification of that support; (2) refusing to dismiss Father as a party

because it misapplied the law in that a paternity test established that he was not the

biological father of Child; (3) declaring Father to be the Child's father and proceeding

to decide the action even though genetic testing showed he was not the biological

father; and (4) in dismissing Mother's third-party petition for paternity against an

alleged biological father. We affirm.

 Factual and Procedural History

 The material facts are undisputed. Mother gave birth to Child on August 4,

2010, while in a relationship with Father. In 2015, Mother sought to have Father

obligated to pay child support. Father was served with a "Notice and finding of

Financial Responsibility" stating that he is the presumed or legal parent of Child

because "He and [Mother] acknowledged his paternity of [Child] by affidavit." In

October 2015, after a hearing, the Director, Family Support Division ("Division"),

entered a Decision and Order ("Division's Order") finding Father, as parent of Child,

obligated to pay child support and provide medical insurance. The Division found

that Father executed an affidavit acknowledging his paternity of Child and that

"[c]ompetent and substantial evidence was presented at the hearing to create a legal

finding that Father is the parent of [Child] . . . and owes a duty of support for said

child." The Division ordered that Father be added on Child's birth certificate. The

 1All statutory references are to RSMo 2016, unless otherwise indicated.

 2
Division's Order was certified to the Pettis County circuit court where it was entered

in the court's docket in case number 15PT-MC00581. Child's birth certificate was

amended to add Father as her father.

 On September 14, 2016, the Pettis County circuit court entered a full order of

protection in case number 16PT-DR00523, which was filed by Father in protection of

Child against Mother's live-in boyfriend. On December 10, 2016, Father filed

Father's Paternity Action in the circuit court of Carroll County. Father alleged

himself to be the natural and biological father of Child. In her answer to Father's

petition, Mother admitted that he was the father of Child.

 On April 2, 2018, Mother filed a motion requesting paternity testing of Father

and Child based on her belief that Father may not, in fact, be Child's father. On May

7, 2018, Mother filed a counter-petition for determination and declaration of

paternity, order of child custody, and order of support in which she asserted that

Child's biological father is unknown and that Father pressured her into placing his

name on the Child's birth certificate.

 On June 18, 2018, Mother filed a motion to dismiss Father's petition alleging

that genetic testing excluded Father as the biological father of Child and that

pursuant to section 210.834.4 the action should be dismissed as to Father. On June

19, 2008, Father filed a motion for third party custody in 18CR-CC00066, which was

consolidated with Father's Paternity Action.

 On October 3, 2018, the court addressed several pending motions and held, in

pertinent part: (1) the paternity test attached to motion to dismiss did not comply

 3
with section 210.834 on its face; and (2) both parties have acknowledged Father is

father of Child, which creates a "legal finding of paternity" pursuant to section

210.823. Thereafter, Mother sought additional genetic testing.

 On November 20, 2018, Mother filed an amended answer and third-party

petition seeking to add M.D.H. as the natural father of Child. The trial court later

dismissed Mother's third-party petition.

 A bench trial was held on December 4, 5, and 19, 2019. The trial court entered

judgment declaring paternity and establishing child custody, visitation and support

on January 31, 2020 ("Judgment"). The trial court declared Father to be the natural,

biological father of Child, awarded Father sole legal custody of Child, awarded Father

and Mother joint physical custody, and ordered that neither party shall pay child

support to the other. The trial court denied Father's motion for third party custody.

 Mother appeals.

 Standard of Review

 We review the judgment of the trial court under the standard of Murphy v.

Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's judgment will be

affirmed unless there is no substantial evidence to support it, it is against the weight

of the evidence, or it erroneously declares or applies the law. Id. We not only review

the facts in the light most favorable to the trial court, we also review the inferences

drawn from those facts in the same manner. Estate of Briggs, 449 S.W.3d 421, 425

(Mo. App. S.D. 2014). "A claim that the trial court erroneously declared or applied

the law is reviewed de novo." Id.

 4
 Analysis

Point I

 In Point I, Mother claims that the trial court erred and misapplied the law in

failing to dismiss Father's Paternity Action filed in Carroll County circuit court.

Mother claims that pursuant to sections 210.845, 452.370.6, and 454.490.1, the Pettis

County circuit court's docket entry of the Division's Order granted Pettis County

continuing and exclusive authority over any modification of the child support such

that Carroll County circuit court did not have authority to modify child support in

Father's Paternity Action. We disagree.

 Section 210.845.1 provides, in relevant part:

 1. The provisions of any decree respecting support may be modified only
 upon a showing of changed circumstances so substantial and
 continuing as to make the terms unreasonable.

Section 210.845.1 provides the burden of proof for seeking modification of a support

decree. It does not provide any statement regarding continuing and exclusive

authority to act with respect to a child support order. Thus, section 210.845.1, by

itself, does not provide any support for Mother's point. Nonetheless, Mother cites

S.J.V. by Blank v. Voshage, 860 S.W.2d 802, 804 (Mo. App. E.D. 1993), for the

statement that section 210.845 "grants the trial court continuing jurisdiction to

modify the judgment or order." However, in Amburn v. Aldridge, 296 S.W.3d 32, 36

(Mo. App. W.D. 2009), we noted that S.J.V. relied on a version of section 210.845,

which has since been "substantially revised." We stated:

 The version of section 210.845 governing S.J.V. provided broadly: "The
 court has continuing jurisdiction to modify a judgment or order entered

 5
 under sections 210.817 to 210.852." Section 210.845, RSMo Supp.1988.
 By contrast, the current version of section 210.845 provides more
 narrowly that "[t]he provisions of any decree respecting support may be
 modified only upon a showing of changed circumstances so substantial
 and continuing as to make the terms unreasonable." Section 210.845,
 RSMo 2000.

Id. We further noted, section 210.845 is now limited to modification of child support

and the party seeking modification now has the burden of demonstrating changed

circumstances so "substantial and continuing" as to render the provisions of the

original decree unreasonable. Id. Thus, Mother's reliance on section 210.845 for her

argument that Pettis County circuit court has continuing and exclusive authority to

modify the child support order is misplaced.

 Mother similarly relies on section 452.370, which provides, in pertinent

part:

 1. . . .[T]he provisions of any judgment respecting maintenance or support
 may be modified only upon a showing of changed circumstances so
 substantial and continuing as to make the terms unreasonable.

 ....

 6. The court shall have continuing personal jurisdiction over both
 the obligee and the obligor of a court order for child support or
 maintenance for the purpose of modifying such order.

(Emphasis added). Section 452.370 expressly provides for the modification of court

judgments, not administrative orders.2

 2Mother cites a series of cases including Hale v. Hale, 781 S.W.2d 815, 818 (Mo. App. E.D.

1989) ("[A] final judgment in a divorce or dissolution of marriage action does not divest the court in
which it was rendered of continued jurisdiction to modify that decree[.]"), Welker v. Welker, 680 S.W.2d
282, 285 (Mo. App. E.D. 1984), Robinson v. Robinson, 628 S.W.2d 689, 690-91 (Mo. App. E.D. 1982),
and Matsel v. Akins, 624 S.W.2d 180, 181-182 (Mo. App. W.D. 1981), to support her assertion that
exclusive authority to act lies with the court where the administrative order was filed while also
conceding all of the cases cited involve divorce proceedings, which resulted in actual court judgments.

 6
 Mother claims that pursuant to section 454.490, the Division's Order qualifies

as a judgment granting the Pettis County circuit court with continuing (and

exclusive) authority. Section 454.490 provides, in pertinent part:

 1. A true copy of any order entered by the director pursuant to section
 454.460 to 454.997 . . . may be filed with the clerk of the circuit court
 . . . in the county where either the parent or the dependent child
 resides or where the support order was filed. Upon filing, the clerk
 shall enter the order in the judgment docket. Upon docketing, the
 order shall have all the force, effect, and attributes of a
 docketed order or decree of the circuit court, including, but not
 limited to, lien effect and enforceability by supplementary
 proceedings, contempt of court, execution and garnishment.

(Emphasis added). However, Mother's reliance on this section is misplaced as our

Supreme Court has expressly held, "Section 454.490 merely provides an enforcement

mechanism, and does not . . . transform administrative orders into circuit court

judgments." State ex rel. Hilburn v. Staeden, 91 S.W.3d 607, 610 (Mo. banc 2002).

The Supreme Court held that "the 'force and effect' language contained in section

454.490 need not be construed as authorizing the entry of a court judgment by an

administrative agency. . . . the administrative order derives qualities of a circuit court

judgment, but it does so only to the extent necessary to permit its enforcement by the

court. It does not become an actual judgment of the court absent judicial

review." Id. at 610-11 (emphasis added).

 There, the Supreme Court distinguished between a child support order and a

court order stating, "pursuant to section 454.490, an administrative child support

order may be enforced without obtaining a court order." Id. at 609. The Supreme

None of the cited cases provide that an entry of an administrative order confers exclusive jurisdiction
in that court.

 7
Court noted that "chapter 454 provides numerous safeguards on administratively

entered support orders that guarantee the right to have child support matters

ultimately determined by a court of competent jurisdiction." Id. at 609-610. One such

safeguard is that any party dissatisfied with the administrative decision may file a

timely petition for judicial review where all legal issues are determined de novo. Id.

at 610. Where judicial review is sought, the court's determination of support

prospectively supersedes the administrative order. Id. Where a docketed

administrative order is not subjected to judicial review, it is not a final judgment.

State v. Salazar, 236 S.W.3d 644, 647 (Mo. banc 2007). Where an administrative

order does not become a final judgment, it is not entitled to preclusive effect. Id.;

Wilson v. Cramer, 317 S.W.3d 206, 212 (Mo. App. W.D. 2010).

 As applied here, neither party sought judicial review of the Division's Order

filed with Pettis County circuit court and, therefore, it never became a final judgment

entitled to preclusive effect. As such, the trial court did not err or misapply the law

in refusing to dismiss Father's Paternity Action in Carroll County circuit court.

 Point I is denied.

Point II

 In Point II, Mother claims the trial court erred in refusing to dismiss Father

as a party to the paternity action as it was a misapplication of the law in that under

section 210.834.4 a paternity test showing a person presumed or alleged to be the

Child's natural father is not the Child's natural father is conclusive of nonpaternity

and the court is required to dismiss the action as to that party. Mother claims the

 8
Division's Order finding paternity is not entitled to preclusive effect on the issue of

paternity even where docketed with the circuit court, the trial court found DNA

testing established he was not the biological father of Child, and the trial court only

refused to apply section 210.834.4 because it incorrectly held that the Division's

Order filed with Pettis County circuit court precluded a separate paternity action.

 In the Judgment, the trial court found:

 4. On October 23, 2015, the Pettis County Circuit Court entered an
 Order in #15PT-MC00581 declaring that [Father] is the parent of the
 Child pursuant to Missouri law, including R.S.Mo. section 210.823,
 the Notice and Finding of Financial Responsibility in said Pettis County
 case stating that [Father and Mother] acknowledged [Father's]
 paternity of the Child by affidavit (Petitioner's Exhibit OOOO), and
 ordering [Father] to pay [Mother] child support for the Child. In
 [Mother's] original answer (filed 7/28/2017) to the Petition in Case
 #16CR-CC00143, [Mother] admitted that "[Father] is the natural and
 biological father of [Child]" and that "[Father and Mother] have
 acknowledged on the birth certification that [Child] is the daughter of
 [Father]."

 5. Subsequent to the appointment (on [Father’s] motion alleging child
 abuse and/or neglect by [Mother]) of a Guardian ad Litem in Case
 #16CR-CC00134 (on 9/18/2017), [Mother] filed a motion (on 4/2/2018) for
 genetic testing. Subsequent DNA testing establishes that [Father] is
 not the biological father of the Child.

 6. Neither [Mother] nor any other party has filed any motion or other
 pleading to set aside said Pettis County Order (see R.S.Mo. Sections
 210.823, 210.854, 454.4753 and 454.4854), excepting only [Mother's]
 allegations and requests for relief, after the DNA testing, herein.

 7. Even assuming that a proper and timely challenge to the Pettis
 County Order were made, in connection with the said DNA testing,

 3Section 454.475.5 provides for judicial review of administrative decisions by filing a petition

for review with the circuit court within 30 days of the mailing of the decision.
 4Section 454.485 provides the director may enter an order establishing paternity in a support

proceeding when the man is presumed the father or when both parents sign sworn statements that
paternity has not been legally established and that the man is the father of the child; the director may
order genetic testing to establish paternity; and the docketing of an order pursuant to section 454.490
of an order establishing paternity shall establish legal paternity for all purposes.

 9
 nonetheless the Court may find that it is not in the best interests of the
 parties and the Child to set aside the Pettis County Order (R.S.Mo. §
 210.854.4), and the Court does, for the reasons set out infra, find that it
 is not in the best interests of the parties and the Child to set aside said
 Order.

 8. The Court finds that [Father] is the father of the Child.

 ....

 12. [Father] and [Mother] have both acknowledged the Child to be the
 child of [Father], in the Pettis County action as noted above (Petitioner's
 Exhibit OOOO), and through their actions, conduct, statements and
 agreements.

 13. The birth certificate of the Child was amended in accordance with
 the said Pettis County Order so as to name [Father] as the father of the
 Child.

 14. Given the Court's finding and judgment herein that [Father] is the
 father of the Child, the Motion of [Father] for Third Party Custody in
 Case #18CR-CC00066 should be denied.

(Emphasis added).

 Section 210.823: Acknowledgment of Paternity

 As found by the trial court, the Division's Order reflects that the parties

acknowledged Father's paternity of Child by affidavit pursuant to section 210.823,5

and that acknowledgment was never properly challenged. An Acknowledgment of

Paternity pursuant to section 210.823 is considered a legal finding of paternity that

 5The affidavit(s) are not included in the record on appeal. The Division's Order reflects that
Father executed an affidavit acknowledging paternity of Child and found "competent and substantial
evidence was presented at the hearing to create a legal finding that Father is the parent of [Child]
pursuant to section 210.819, 210.822, 210.823 and 454.485[.]" On the "Notice and Finding of Financial
Responsibility" included with the Division's Order it states, "[Father] is the presumed or legal parent
of [Child] because he and [Mother] acknowledged his paternity of [Child] by affidavit. Section
210.823," indicating the affidavits were executed prior to Mother petitioning the Division. Moreover,
in the fact portion of her brief, Mother asserts, "In the Division proceedings, Mother and [Father]
stipulated [Father] was Child's father, agreed he would pay her $400 in child support, and signed an
affidavit for the amendment of Child's birth certificate."

 10
can only be challenged by the signatories as provided in section 210.823

(“Acknowledgment of Paternity”). Section 210.823 provides:

 1. A signed acknowledgment of paternity form pursuant to section
 193.215 shall be considered a legal finding of paternity subject to
 the right of either signatory to rescind the acknowledgment, in writing,
 by filing such rescission with the bureau within the earlier of:

 (1) Sixty days from the date of the last signature; or

 (2) The date of an administrative or judicial proceeding to
 establish a support order in which the signatory is a party. The
 acknowledgment may thereafter only be challenged in court on
 the basis of fraud, duress or material mistake of fact with the
 burden of proof upon the challenger. No judicial or
 administrative proceeding shall be required or permitted to
 ratify an unchallenged acknowledgment of paternity.

 2. Except for good cause shown, the legal responsibilities of the parties,
 including child support obligations, shall not be suspended during the
 pendency of any action in which an attempt is made to revoke the signed
 acknowledgment under this section.

 3. The acknowledgment shall be filed with the bureau. An
 acknowledgment effectuated under the law of any other state or
 territory shall be given the same effect in this state as it has in the other
 state or territory.

(Emphasis added).

 Here, there is no dispute that Mother and Father executed an

Acknowledgment of Paternity pursuant to sections 210.823 and 193.215.6 Moreover,

there is no dispute that neither party filed a rescission within sixty days of the last

signature on the written acknowledgement or the date of the administrative

proceeding which established support. "From these undisputed facts, two

 6Section 193.215.6 provides, in pertinent part: "Upon written request of both parents and
receipt of a sworn acknowledgment of paternity notarized and signed by both parents of a child born
out of wedlock, the state registrar shall amend the certificate of birth to show such paternity."

 11
consequences follow: (1) the Acknowledgment of Paternity shall be considered a legal

finding of paternity, and (2) Mother and/or [Father] may only challenge the

Acknowledgment of Paternity in court on the basis of fraud, duress, or material

mistake of fact." Wilson, 317 S.W.3d at 210 (emphasis added). Mother did not assert

such a challenge to the Acknowledgment of Paternity in her pleadings.

 Here, in Mother's answer to Father's petition, Mother admitted that Father is

the natural and biological father of Child and that Mother and Father acknowledged

his paternity on Child's birth certificate. Later, Mother filed a counter-petition in

which she asserted that the natural and biological father of Child is unknown and

that Father pressured Mother to place his name on the Child's birth certificate,7 a

claim Father denied in his answer to her counter-petition. Still later, Mother

amended her answer to deny that Father was the father of child but did not plead

any challenge to the Acknowledgment of Paternity. In none of these pleadings did

Mother articulate or plead a challenge to the Acknowledgment of Paternity on the

basis of fraud, duress or material mistake of fact.8 Thus, the legal finding of paternity

remains, where, as here, it has not been appropriately challenged. Id. (citing section

210.823); see also In re Adoption of N.L.B. v. Lentz, 212 S.W.3d 123, 128 (Mo. banc

2007) (Father had standing to intervene in adoption proceeding because he and

mother had signed an Acknowledgment of Paternity pursuant to section 193.215

 7Mother did not make such a claim as to the Acknowledgment of Paternity, but rather solely

as to the birth certificate.
 8Notably, after Father answered Mother's counter-petition, she filed a motion to dismiss based

on genetic testing results finding Father was not the father of Child. In his response, Father asserted
Mother's failure to challenge the Acknowledgment of Paternity was fatal as it was a legal finding of
paternity even in the face of genetic results. Thereafter, Mother filed "Suggestions in support of all
pending motions" which did not address the Acknowledgment of Paternity issue asserted by Father.

 12
which, under section 210.823, "shall be considered a legal finding of paternity.")

Moreover, this legal finding is expressly conclusive as section 210.823.1(2) states: "No

judicial or administrative proceeding shall be required or permitted to ratify an

unchallenged [A]cknowledgment of [P]aternity."

 With regard to the effect of an Acknowledgment of Paternity, Mother

misrepresents our holding in Wilson. 317 S.W.3d at 206. In her brief, Mother states

that in Wilson, we found that section 210.823 "does not preclude anyone from later

bringing a separate action for paternity." In Wilson, mother and father executed an

Acknowledgment of Paternity. Id. at 207. Thereafter, Wilson, a man not named on

the Acknowledgment of Paternity and therefore a third party to such

Acknowledgement, filed a petition seeking declaration that he was the child's

biological father. Id. at 208. There, we held that section 210.823 does not bar the

claim of the third-party, Wilson. Id. at 210. We specifically noted, "By its terms,

section 210.823 does not touch upon a third party's standing to bring a paternity

action under section 210.826, and thus does not deprive [third party] Wilson of the

standing conferred by that section." Id. (emphasis added).9 It is clear the Wilson

 9In her briefing, Mother did not include this footnoted sentence in her nearly page-long block

quote from Wilson. Instead, using ellipsis she excludes only that sentence from the middle of the block
quote. After not including the footnoted sentence, Mother then highlights a portion of Wilson which
states, "As noted, by its plain terms, section 210.823 does not deprive anyone of standing to bring a
paternity action under 210.826" to argue "anyone" includes the man and woman signing the
Acknowledgement of Paternity. Yet, the very sentence Mother highlights is referring back to this
footnoted sentence we now quote, which specifically and clearly denotes 210.823's inapplicability to
third parties only. It is readily apparent that taken in context, the Wilson court's use of "anyone"
merely refers to actions by third parties, yet in Mother's use of Wilson this is not apparent as a result
of Mother's exclusion of the footnoted sentence. Though Mother's counsel claimed during oral
argument that the use of 'anyone' instead of 'third-party' is "a distinction without a difference," we see
this as an unfair characterization of Wilson's holding caused by the intentional deletion of the
footnoted sentence and find it unbecoming of an officer of the court to represent the Wilson holding in
this manner.

 13
holding is limited to a third-party, that is, a person who is not one of the signatories

to the Acknowledgment of Paternity. As we concluded in Wilson, "Thus, under section

210.826.3, the Acknowledgment of Paternity, which, in effect, is an agreement

between Mother and [Father] that [Father] would assume legal obligations of [the

child], cannot deprive [a third party] of standing to establish his paternity."10 Id. at

211 (emphasis added).

 Because the Acknowledgment of Paternity remains unchallenged by Mother or

Father as provided in section 210.823.1(2), both Mother and Father are precluded

from further challenging it and the resultant legal finding of Father's paternity. As

such, Mother's argument that the trial court erred in refusing to dismiss Father in

reliance on section 210.834.4, due to the paternity test results indicating Father is

not the biological father of Child, fails.11 This is not to say that Mother could not have

relied on the paternity test results to assert a timely challenge to the

Acknowledgment of Paternity pursuant to section 210.823.1(2), on the basis of a

material mistake of fact, but that is not what occurred here. Mother failed to timely

raise any challenge to the Acknowledgment of Paternity pursuant to section

210.823.12

 10This summary of Wilson is also not included in Mother's nearly page-long block quote, which

concludes just prior to this summary sentence.
 11Mother cites State ex rel. K.R. by May v. Brashear, 841 S.W.2d 754 (Mo. App. E.D. 1992) and

Krokstrom v. VanDolah, 826 S.W.2d 402 (Mo. App. W.D. 1992), to demonstrate the mandatory
language of section 210.834.4. However, neither case involves a situation where the parties previously
executed acknowledgments of paternity and are therefore unpersuasive.
 12We note that in her cross-petition, Mother asserted that Father pressured her to place his

name on the birth certificate but without any mention of or connection to the Acknowledgment of
Paternity. On appeal, Mother does not argue that her assertion in the cross-petition was a challenge
to the Acknowledgment of Paternity. Moreover, the record reflects that the parties executed affidavits

 14
 In light of our determination that the unchallenged Acknowledgment of

Paternity has a preclusive effect on the issue of paternity as to Mother and Father,

we need not determine if the Division's Order has a similar effect.

 Point II is denied.

Point III

 In Point III, Mother claims that the trial court erred in declaring that Father

is the Child's father and deciding Father's paternity action while also acknowledging

that DNA testing conclusively showed he was not the Child's natural father. Mother

claims that the trial court misapplied the law in that Missouri does not recognize any

form of parentage other than actual biological parentage and a person who is not the

child's biological parent may proceed only in an action for third-party custody under

section 452.375.

 This point fails due to our determination in Point II, that the Acknowledgment

of Paternity is considered a legal finding of Father's paternity which has remained

unchallenged pursuant to section 210.823. Moreover, the authorities cited by Mother

are factually inapplicable as none involve a similarly unchallenged Acknowledgment

of Paternity.

 Point III is denied.

Point IV

 In Point IV, Mother claims that the trial court erred in dismissing Mother's

third-party petition for paternity against Father because it misapplied the law in that

acknowledging Father's paternity of Child and the Division's Order directed that Father be added to
the Child's birth certificate.

 15
under section 210.830, each man alleged to be a child's natural father shall be made

parties to the action and the Division's Order is not entitled to preclusive effect on

paternity.

 This point also fails due to our determination in Point II, that the

Acknowledgment of Paternity is considered a legal finding of Father's paternity

which has remained unchallenged pursuant to section 210.823. As such, Mother is

precluded from challenging the legal finding of Father's paternity except as provided

in Section 210.823.1(2), which did not occur. Wilson, 317 S.W.3d at 210.

 Point IV is denied.

 Conclusion

 We affirm the trial court's judgment.

 __________________________________________
 W. DOUGLAS THOMSON, JUDGE
All concur.

 16